## L. P. CROWN & CO. *v.* WILLIAM BROWN.

*Representations as to the responsibility of another.*

D. sent an order to the plaintiffs for a quantity of books to be sold him on credit, and the defendant wrote and signed upon the order the following words: "I consider the above order good." *Held,* that the proper construction of these words was not, upon the one hand, that the defendants believed that the plaintiffs, if they complied with the order, would get their pay from D.; nor, upon the other, that the defendant believed that D. was responsible for that amount, and that payment thereof could be enforced by law out of his property; but that, in fact, they merely amounted to the expression of the defendant's belief that D. had sufficient property or pecuniary means, attachable or otherwise, to enable him to pay the order, and therefore that he might safely be trusted for it.

CASE for falsely and fraudulently inducing the plaintiffs to give credit to one David B. Davenport. Plea, the general issue, and trial by jury, at the December Term, 1857,— POLAND, J., presiding.

It appeared on trial that the plaintiffs were publishers and booksellers in Boston, Massachusetts, and that the defendant was the town clerk and postmaster in Lowell, Vermont.

The plaintiffs read in evidence the following order from Davenport on them:

"LOWELL, March 16, 1854.

"L. P. CROWN, Esq.:—Please send me thirty-eight Panoramas and twelve Modern Historys, and charge the same to me, and I will pay as soon as I distribute the books.

(Signed)           D. B. DAVENPORT,"

and on the margin of this order the following words, signed by the defendant: "I consider the above order good."

(Signed)           WM. BROWN, P. M."

The plaintiffs then gave evidence tending to prove that they forwarded the books specified in said order, to Davenport, and that he received them; that they sent the books to him relying on the recommendation of the defendant, and that Davenport had not paid for them, and was wholly irresponsible, destitute of property, and insolvent, both before, and at the time, and since the order was given; and also that he had resided for several years in Lowell,

and near the defendant, who was well acquainted with his pecuniary condition.

The defendant gave evidence tending to prove that Davenport was doorkeeper of the legislature of the state, in the fall of 1853, and that for his services in that capacity, he received more than two hundred dollars: that in the winter following, he kept a shop in Lowell, where he sold articles of various kinds, liquors, fruits, and groceries, and was apparently doing a thriving business; that he was a capable and trusty business man, and that he was employed by one Saunders, to buy and sell produce in considerable quantities, and to purchase supplies for a store, and was entrusted with considerable sums of money for that purpose, and was entrusted by the Lamoille County Bank at Hydepark, with some of their money to exchange for that of other banks; that when Davenport applied to the defendant to recommend him to the plaintiffs, he told the defendant that seventy-five dollars of the money he received at Montpelier the fall before, was loaned out to two men; that he was getting these books from the plaintiffs to sell, and could make large profits from the resales, and would pay the plaintiffs for them as fast as he sold them. The defendant also proved by other evidence that Davenport had the seventy-five dollars loaned as he stated, and it was conceded that Davenport obtained the books for the purpose of selling them again. The plaintiffs' counsel insisted, and requested the court to charge the jury that the words indorsed on Davenport's order, signed by the defendant, were equivalent to a representation that Davenport was responsible for that amount, and that payment thereof could be enforced by law, out of his property. But the court declined so to charge, but did charge that the fair meaning of the language was, that the defendant believed that the plaintiffs might safely trust Davenport with the books named in the bill, and that, if they did so, they would get their pay for them from Davenport, and that, if from the evidence they found that when the defendant signed said statement, he honestly believed, from his knowledge of Davenport and his pecuniary affairs, that he would pay the plaintiffs for the books, if he obtained them, then the plaintiffs could not recover against him in this action for false and fraudulent representations. To this part of the charge, and

Crown et al *v.* Brown.

to the refusal of the court to chage as requested, the plaintiffs excepted.

*J. Cooper,* for the plaintiffs.

*T. P. Redfield,* for the defendant.

The opinion of the court was delivered by

BARRETT, J. This is an action on the case against the defendant for falsely and fraudulently inducing the plaintiffs to give credit to Davenport. The means by which it was done was an order drawn by Davenport, addressed to the plaintiffs, as follows ;

" L. P. CROWN, Esq. :—Please send me thirty-eight panoramas, and twelve modern histories, and charge the same to me, and I will pay as soon as I distribute the books.

[Signed] " D. B. DAVENPORT."

To this the defendant appended, as follows :

" I consider the above order good.

[Signed] " WM. BROWN, P. M."

It is not questioned, that in reliance on this instrument the plaintiffs fowarded the books. It turned out that the purchaser was wholly insolvent, and the plaintiffs have been wholly unable to get their pay of him.

There is no conflict in the views of counsel as to the principles, and rules of law which govern this form of action, when predicated on such a cause.

It is agreed that the defendant must have acted falsely and fraudulently, in making the representation, by which the plaintiffs were induced to give the credit. If the representation was in effect what the county court held it to be in the charge, we should regard the other instructions to the jury as being agreeable to the law of the subject, and proper for their guidance to a correct result upon the evidence.

But we are unable to put such a construction upon the representation made by the defendant, as the county court did. The language of the presiding judge, in giving that construction, is explicit. It restricts the meaning of the representation to an expression of the defendant's belief, that the plaintiffs might safely

trust Davenport for the books named in the order, and if they did, that they would get their pay of him.

This, obviously, comes far short of the expression of a belief or opinion, as to the *responsibility* of Davenport, and would be answered, even though the defendant knew him to be irresponsible and destitute of property wherewith to pay the debt, if the defendant, in reliance on his character and habits, and the temporary enterprises in which he was then engaged, and the representations he made as to his temporary resources, believed that, as an honest man, Davenport would pay the debt.

The construction of the county court clearly does not embrace the idea of Davenport's responsibility, as to pecuniary means. We think that construction too narrow. The import of the language seems to us to be, that the defendant considered the order good, in the sense that he considered Davenport to be pecuniarily responsible for the amount, and, in view of his being thus responsible, was safely to be trusted for it.

But while we thus hold, we think that the request of the plaintiffs for a construction, went beyond the proper limit.

It would seem impossible, in any legitimate sense of the language, to hold that it was " a representation, that Davenport was responsible for the amount, and that payment thereof could be enforced, by law, out of his property." It was, at most, the statement of the defendant's *belief*, and, if that belief was honestly entertained, it could not subject him to liability for *falsehood* or *deceit*, however erroneous it might be. Nor does it seem warrantable to hold, that it goes so far as the statement of a belief, *that the amount could be collected by law out of Davenport's property*. We think a belief that Davenport was responsible, predicated on the fact of his having pecuniary means, rendering him able to pay the amount, would answer the representation, whether those means were in money, which might not be reached by process of law, or in other property or debts due, that might be so reached.

There was no error, then, in the refusal of the court to charge as requested; but, as has often been decided, the plaintiff was entitled to a correct construction of the representation, and to instructions to the jury, confirmable to such a construction, such as the law applicable to the subject warrants and requires. It is

obvious, that the particular instructions to the jury, in reference to a proper verdict, as depending on the other evidence in the case, must be effected by the construction given to the written representation made by the defendant. What those instructions should be, in view of the construction which this court gives to that representation, need not be here indicated.

The judgment of the county court is reversed, and a new trial granted.