[No. 1442. Decided December 28, 1894.]

A. A. DENNY ET AL., *Executors, Respondents, v.* WILLIAM P. SAYWARD, *Appellant.*

PRINCIPAL AND SURETY—STATUTE FOR PROTECTION OF SURETIES—
RES JUDICATA—JUDGMENT AGAINST SURETY WITHOUT SERVICE
ON PRINCIPAL—ACTION BY SURETY—VARIANCE—SUIT BY EXECUTOR AFTER FINAL ACCOUNTING—LIMITATIONS.

The statute permitting sureties, in an action against them and their principals, to have the question of suretyship adjudicated, is

not a limitation of their rights as existing before its enactment, but is intended as an additional and more complete remedy than existed under the common law.

The doctrine of *res judicata* does not apply to an action brought by a surety to recover from his principal such portion as has been paid upon a judgment obtained against them in a former action, in which the principal was a defendant, but in which no judgment had been taken against him for the reason that he was a non-resident of the state and did not appear in the action.

Answers to interrogatories propounded to a defendant, under Code Proc., §§ 1660-1665, may be put in evidence, and, as evidence, are subject to contradiction.

Where one has transferred all his sawmill business and timber lands to another, becoming the agent of the latter in conducting the mill business, it being within the scope of his authority to secure logs for its use, a contract entered into by the agent, whose primary object is to secure a large quantity of logs at a cost not in excess of the market price, is binding on the principal, although one of the incidental provisions of the contract is, that a certain portion of the purchase price shall be applied upon a judgment obtained against the agent, while he was conducting the business prior to its transfer to his principal.

Where a judgment has been rendered against sureties without fault on their part and after a defense made in good faith by them, such judgment will be conclusive in an action by them to recover money which they have paid on account thereof, if the principal had knowledge of the action, even though he was not served with process therein.

The fact that a judgment against two sureties was against them as partners and not as individuals, while one of the sureties brings an action against the principal and sets up an individual judgment which he has been compelled to pay, does not constitute such a variance as to justify reversal, when it does not appear that the defendant is injured thereby.

Although a final account in the administration of an estate has been rendered and an order of distribution made and carried into effect, such facts will not be prejudicial to an action by the executor in the interests of the estate, if he has not received his final discharge nor his bondsmen have been released.

The fact that a non-resident owns property in the state liable to attachment will not set the statute of limitations running from the time the right of action against him accrues, but the running of the statute remains suspended during his absence from the state.

*Appeal from Superior Court, King County.*

*Battle & Shipley*, for appellant.

*Bausman, Kelleher & Emory*, for respondents.

The opinion of the court was delivered by

HOYT, J.—Plaintiffs brought this action to recover money alleged to have been paid by them in part satisfaction of a judgment against their decedent. Such judgment was recovered in a suit brought upon a contract which was in substantially the following language:

"THIS AGREEMENT made and entered into this 3d day of September, 1880, by and between George S. Meigs and William P. Sayward, by his attorney in fact and managing agent George A. Meigs, and James Crawford and William H. Harrington, partners doing business under the firm name of Crawford and Harrington, the parties of the first part, and Granville O. Haller and Donald Dingwall, by their attorney in fact and agent, G. Morris Haller, the parties of the second part, Witnesseth : That the parties of the first part agree to and have purchased from and of the parties of the second part, and the said parties of the second part agree to and have sold to the said parties of the first part, all the saw logs belonging to the said Donald Dingwall and which the said Granville O. Haller has a mortgage upon, now situate, lying or being in the Samish river and in the Sloughs adjacent thereto in Whatcom county, W. T., and estimated to be about three and one-half million feet more or less, upon the terms and conditions following, to-wit : that is to say, Whereas the Meigs Lumber and Ship Building Company is indebted to Granville O. Haller in the sum of three thousand five hundred and ninety-six and 75-100 ($3,596.75) dollars with interest thereon from May 20th, 1879, until paid, at the rate of ten per cent. per annum, besides costs upon a judgment entered in the district court of the 3d judicial district of Washington Territory, holding terms at Port Townsend on the 22d day of May, 1879, and wholly unpaid, Now, therefore, the said logs are sold at Samish river and are to be scaled by Edward McTaggert, the government surveyor of logs at said place before removal therefrom—said surveyor to scale the same according to the laws of Washington Territory now in force, and is to exclude from said scale the

damaged sap upon said logs and also such logs as are not merchantable, the said parties of the first part shall furnish to said parties of the second part such additional boom chains as shall be necessary for booming said logs, and shall begin taking said logs at once and shall continue taking said logs at the rate of at least five hundred thousand feet per month if the said Dingwall shall have them boomed that fast and shall have all said logs turned away by the first day of March, 1881, and shall pay for the same to G. Morris Haller, or his order, at the rate of five dollars per thousand feet for each and every thousand feet so scaled according to the certificate of said Edward McTaggert and for every thousand feet so paid for, said parties of the second part shall credit one dollar upon the said judgment, said payments to be made by said Crawford and Harrington at the bank of Dexter Horton & Co. in Seattle, sixty days from the date of the removal of each boom of said logs from said Samish river, and shall be of the full price of the logs so removed ; and in case said logs are not removed as fast as five hundred thousand feet per month, still the said logs shall be paid for sixty days from the date that notice is given to said Crawford and Harrington that such amount is ready for removal the same as if they had been taken and removed on the date of said notice. And if the said logs are not all removed by the 1st day of March, 1881, still the balance remaining shall be paid for as aforesaid, sixty days from said time, the same as if said logs were removed on said day ; and said parties of the first part also agree to pay as aforesaid, at the time the last payment of said logs is due as aforesaid whatever balance remains due upon said judgment together with the costs therein.

" In witness whereof the parties hereto have hereunto set their hands and seals this 8th day of September, 1880. (Signed)

|  |  |  |
|---|---|---|
|  | G. A. MEIGS, | (Seal) |
|  | W. P. SAYWARD, | (Seal) |
| By his attorney in fact | G. A. MEIGS, | (Seal) |
|  | JAMES CRAWFORD, | (Seal) |
|  | WM. A. HARRINGTON, | (Seal) |
|  | CRAWFORD & HARRINGTON, | (Seal) |
|  | GRANVILLE O. HALLER, |  |
| By his attorney in fact | G. MORRIS HALLER, | (Seal) |
|  | DONALD DINGWALL, |  |
| By his attorney in fact | G. MORRIS HALLER, | (Seal)." |

The ground upon which the recovery was sought in this

action was that James Crawford and William A. Harrington, against whom the judgment was rendered, which plaintiffs had been required to pay, were, though named as principals in said contract, in fact only sureties for the defendant.

Upon the trial the following facts were sufficiently proven to require their submission to the jury for determination: That, prior to 1880, George A. Meigs, or the Meigs Lumber & Ship Building Company, was the owner and operator of certain saw mills known as the Port Madison mills, together with a large amount of timber land and other property usually owned in connection with the operation of such mills; that thereafter, and before the execution of the contract above referred to, these mills and the property owned in connection therewith, were sold to the defendant; that he entered into the possession thereof and continued to operate said mills as they had been before operated; that for the purposes of the operation of such mills defendant constituted George A. Meigs his agent with full power to transact all business necessary to, or usual in connection with, such operation, including the purchasing of logs for the use of the mills and the sale of their products; that said Meigs, as such agent, had been so operating these mills for some time before the contract in question was entered into, and as incident to such operation had, in the name of said defendant, purchased large amounts of saw logs for cash and upon credit; that his action in so doing was known to the defendant, and had been fully ratified and confirmed by him; that the said Meigs, as such agent, desired to purchase for the use of said mills a lot of saw logs, consisting of about 3,500,000 feet, owned by one Donald Dingwall and situated in the Samish Slough, upon which logs Granville O. Haller had a mortgage, so that they could not be sold without his consent; that he desired to purchase the same upon credit; that the owner and said Haller refused to sell the logs on credit unless security in writing for the performance of the contract of purchase were furnished by said Meigs, as agent for the defendant; that it was agreed between said Meigs, as such agent, and said Dingwall and Haller, that they

would make the sale upon credit if James Crawford and William A. Harrington would become sureties for the performance of the terms thereof by the defendant; that for the purpose of evidencing such sale and the agreement of suretyship upon the part of said James Crawford and William A. Harrington, the contract above set out was entered into; that for convenience the said Crawford and Harrington and the said Meigs were joined with defendant as principals, but that in fact they only signed and became liable upon the contract as sureties for said defendant. That thereafter, and upon alleged non-compliance with the terms of the contract, an action was brought by Granville O. Haller, who had succeeded to the rights of said Donald Dingwall, against said George A. Meigs, the defendant, James Crawford and William A. Harrington; that in such suit no service was had upon the defendant; that the defendants Crawford and Harrington appeared and defended the action; that the said George A. Meigs also defended; that the cause as against the defendants who were served was tried upon its merits and resulted in a judgment of $15,000 or more against them. That thereafter said Crawford died, leaving a last will and testament, of which the plaintiffs were duly appointed and qualified as executors; that as such executors they were called upon to, and did, pay seven or eight thousand dollars of the judgment so recovered. That said defendant, at the time of the execution of said contract, was, and ever since has been, a non-resident of the State of Washington, residing in the Province of British Columbia. Other facts necessary for an understanding of the points decided will appear in the course of the opinion. The trial resulted in favor of the plaintiffs, and from the judgment against him the defendant has appealed.

He here attacks the proceedings in a voluminous brief, prepared with care and ability. The numerous questions presented by the record are fully discussed, and it seems to us the best possible showing for the reversal of the judgment has been made. Such brief is so voluminous, and the points, when considered separately, are so numerous, that

we shall not attempt such consideration, but shall follow the grouping under principal points of the appellant's brief, without attempting a detailed discussion of the several subpoints under each principal one.

The first error assigned is in the overruling of defendant's demurrer to the complaint. The principal reason suggested why the complaint is insufficient is that the plaintiff's decedent as a surety should have protected himself in the original action under the provisions of § 756 *et seq.*, Code of Procedure, and that having failed to do so he is without remedy. In our opinion this statute in no way limited the rights of sureties as they existed before its enactment. The object of the statute was to afford an additional and more complete remedy than existed, and not to deprive a surety of rights which he had before its enactment. See *Harker v. Glidewell*, 23 Ind. 219; Brandt, Suretyship, § 214.

The next objection upon the trial was as to the introduction of any testimony on the part of the plaintiffs, and as reasons for such objection it was contended that since the defendant was a party to the former action, and no judgment was taken against him, it was *res adjudicata* in his favor. Such might be the rule as between the original plaintiff and the defendant, but could not be as between the latter and a co-defendant in that action; especially where, as in this case, the defendant was a non-resident of the state and never appeared in the action. See *Snider v. Greathouse*, 16 Ark. 72 (63 Am. Dec. 54); *Peters v. Barnhill*, 1 Hill (S. C.), 234.

Upon the trial the court allowed answers of the defendant to certain interrogatories propounded to him by the plaintiffs to be put in evidence, and it is alleged that this was error. No authorities are cited to sustain this allegation of error, and no reason satisfactory to our minds has been suggested why such answers could not be shown as admissions against interest. Beside, the statute seems to contemplate that the answers shall be put in evidence and, when in, shall be subject to contradiction. See §§ 1660 to 1665, Code of Procedure.

The fourth objection grows out of the terms of the con-

tract above set out.  It is claimed that it appears from its
terms that it was entered into, in part at least, to secure the
payment of the debt of the agent, George A. Meigs, or of
the Meigs Lumber & Ship Building Company, of which he
was the manager, and that for that reason it was not in the
power of said Meigs, as agent, to bind the defendant, as his
principal, to its performance.  If the primary object of the
execution of the contract had been to secure the payment of
this debt there would be force in this objection ; but an ex-
amination of all the language used fails to satisfy us that
such was the object.  On the contary, it sufficiently appears
that the object sought was to secure for the defendant a large
quantity of logs at a sum per thousand which it is not
claimed was in excess of the market price.  And this being
so, we think its execution was within the power of said
Meigs, as agent for the defendant.  It was within the scope
of his authority, in conducting the mill business, a part of
which was the securing of logs for its use.

The next contention grows out of the action of the court
in admitting in evidence a copy of the judgment upon which
the money sought to be recovered had been paid by plaintiffs.
The reason for objecting to the introduction of this copy was
that the defendant had not been served with process in the
action and could not be affected by the judgment.  Author-
ities have been cited to establish the doctrine that one not
served with process in an action is not bound by a judgment
rendered therein ; but they are none of them in point, under
the circumstances of this case.  A judgment against the
sureties rendered without their consent, and especially after
a defense made in good faith by them, is at least *prima facie*
sufficient to authorize them to recover of their principal the
amount which they have been called upon to pay thereon ;
and if the principal had knowledge of the pendency of the
action, even though he was not served with process therein,
the judgment rendered against the sureties, without fault on
their part, would be conclusive in an action by them to re-
cover money which they had paid on account of such judg-
ment.  The effect of this judgment upon the defendant was

in issue in the case of *Dexter Horton & Co. v. Sayward*, 66
Fed. 265, and the conclusion reached by the learned judge
who tried the case was in accord with the above suggestions.
See also: *Williams v. Greer's Admrs.*, 4 Hayw. (Tenn.)
235; *Bone v. Torry*, 16 Ark. 83; *Lewis v. Fort*, 75 N. C.
251; *Hare v. Grant*, 77 N. C. 203.

The next objection grows out of an alleged variance be-
tween the judgment proven and the judgment introduced in
evidence.    There may be some question as to whether or not
the former judgment was against James Crawford and Wil-
liam A. Harrington as individuals, or as members of the
partnership of Crawford & Harrington; but it does not so
clearly appear that the defendant was injured by any ques-
tions growing out of this variance, if variance it was, as to
justify a reversal.    Defendant objects to the judgment upon
the ground that it does not show that it was ever entered
in the journals of the court in which it was rendered.    We
have examined the transcript of the judgment, together with
its authentication, and are unable to see anything which
would authorize its rejection for the reason suggested.

The next objection is not, in our opinion, warranted by
the proofs.    We are unable to find from the record that the
payment upon the judgment was other than compulsory on
the part of the plaintiffs.

The foundation of the next allegation of error is stated by
the appellant as follows: " In a suit by surety for subro-
gation, principal entitled to use every legal defense."    This
is not an exact statement of the principle which it is claimed
was negatived by the court upon the trial.    The plaintiffs
did not seek a technical subrogation to the rights of the
plaintiff in the original action; they sought an independent
recovery of money which they had paid on account of the
defendant, and introduced the judgment only for the purpose
of showing that such payment was not a voluntary one.    As
stated before, the weight of authority is to the effect that a
judgment like the one sought to be introduced in the case at
bar is at least *prima facie* evidence as against the principal;
and that it is conclusive unless some collusion or fraud upon

the part of the surety is shown.   The testimony offered by
the defendant did not tend to show any such fraud or col-
lusion, and if it did it was not competent under the plead-
ings.   There was no sufficient allegation of fraud or col-
lusion on the part of the sureties in the answer.   Beside, we
think the evidence disclosed a state of facts from which it
could be fairly presumed that defendant had notice of the
pendency of the former suit.

It is next claimed that the contract, for the violation of
which the original action was prosecuted, was so ambiguous
that evidence dehors the instrument was admissible to show
the intention of the parties.   But an examination of the
language of the contract fails to show us any such ambi-
guity as would warrant evidence of that kind.

Defendant claims that he should have been allowed to
prove that administration of the partnership of Crawford &
Harrington was pending.   But what we have said in refer-
ence to the question of variance between the judgment
pleaded and the one proven is sufficient answer to the con-
tention in that regard.

It is next contended that the estate of James Crawford,
under his will, had been completely settled, and that, for
that reason, the executors had no authority to maintain the
action.   It appeared from the testimony that administration
of the estate had so far progressed that there had been a final
account rendered, and an order of distribution made and car-
ried into effect.   It is possible that these acts would, for cer-
tain purposes, warrant the presumption that administration
of the estate had been closed.   But this presumption cannot
be invoked by the defendant for the purposes sought; when
the interests of the estate require the exercise of authority
by an executor his right to act should be upheld, if he has
not received his final discharge, unless his bondsmen have
been released.

The defendant invokes the aid of the statute of limita-
tions.   It appears that from the time the right of action ac-
crued until the suit thereon was commenced the defendant
had been a non-resident of the state and absent therefrom.

This, it is conceded, would prevent the running of the statute were it not for the fact that defendant had property in the state liable to attachments. But it is argued that since the plaintiffs could by suing out a writ of attachment have prosecuted their action without personal service upon the defendant, the running of the statute was not suspended by his absence. This claim cannot be sustained. The language of the statute is too plain. See § 123, Code Proc. Beside, the remedy by attachment is an extraordinary one, requiring the giving of a bond and the making of an affidavit. From which it must follow that the power to commence such an action is not the equivalent of the opportunity to personally serve the defendant with process.

It is next objected that a certain finding, by way of a special verdict, upon the trial of the original action, avoids the judgment so far as the defendant is concerned. But such special finding was not shown to have been so connected with the general verdict as to warrant the contention. Beside, it is probable that the sureties would not lose any rights on account of such finding, even although the general verdict was inconsistent therewith. They were not responsible for the results of the action so long as they defended in good faith.

The other allegations of error grow out of the instructions given to the jury. Several exceptions were saved to these instructions, and errors founded thereon have been argued in the brief of appellant. Most of them go to the principles which are discussed in the brief under other heads, and have already been noticed, and for that reason no detailed consideration of the several exceptions to the instructions is necessary. We shall content ourselves with saying that upon a careful consideration of the instructions as a whole, we think the law applicable to the questions to be decided by the jury was properly stated, and that the exceptions to the instructions given furnish no reason for the reversal of the judgment. And for the reason that the jury were fully instructed as to the law of the case, defendant was not prej-

udiced by the action of the court in refusing to give the instructions requested by him.

The judgment will be affirmed.

DUNBAR, C. J., and SCOTT and STILES, JJ., concur.