[No. 1844.  Decided February 29, 1896.]

WATSON W. MOORE, *Appellant*, v. A. L. PALMER *et al.*, *Executors*, *Respondents*.

INTERROGATORIES OF ADVERSE PARTY — ADMISSIBILITY IN EVIDENCE—
EVIDENCE — COMPARISON OF SIGNATURES — TRANSACTIONS WITH DE-
CEDENT — DECLARATIONS OF DECEDENT IN OWN INTEREST — SUFFI-
CIENCY OF EVIDENCE.

Answers to interrogatories propounded under Code Proc., § § 1661 *et seq.* cannot be put in evidence by the party who framed the answers.

Upon a question as to the genuineness of a signature, it is competent for experts to make comparison with admittedly genuine signatures of the same person to papers which are not otherwise properly in evidence in the case.

In an action upon a promissory note alleged to have been executed by a decedent, and to which the defense has been set up that it is a forgery, evidence of statements made by decedent at about the time of the date of the note is admissible for the purpose of showing the improbability of his having executed it. (DUNBAR, J., dissents.)

Where the verdict of the jury is reasonably supported by competent evidence, it will not be disturbed upon appeal.

Appeal from Superior Court, King County — Hon. T. J. HUMES, Judge.   Affirmed.

*Robinson & Rowell*, and *S. H. Piles*, for appellant.

*Struve, Allen, Hughes & McMicken*, for respondents.

The opinion of the court was delivered by

GORDON, J.— Respondents Palmer and Pontius are executors of the estate of J. Gardner Kenyon, who died on December 22, 1892.  This action was brought by the appellant to recover of respondents as such executors upon a promissory note which the complaint alleges was executed by the said J. Gardner Kenyon in his lifetime, in the sum of $20,000.00, bearing date

December 23, 1889, payable four years thereafter together with interest at ten per cent. per annum. The respondents answered, denying the making of the note, alleging it to be a forgery, and further alleging that if the signature to the note was the signature of Kenyon, the same had been procured by some trick or device and without knowledge on his part as to its character. There was a verdict for the respondents, and from the judgment entered thereon the case is here on appeal.

1. It appears that after issue was joined the respondents filed with the court certain interrogatories to be propounded to the appellant for the discovery of facts alleged to be material to the defense of the action, that thereafter the appellant moved the court to strike the interrogatories from the files for various reasons, which motion was denied by the court. Subsequently, the appellant made full answer to the interrogatories so propounded. It is urged in this court that the refusal to strike was error, but we think otherwise, and it would be harmless, if error at all.

2. At the trial the appellant offered said interrogatories and answers as evidence in his own behalf, and they were excluded upon the objection of respondents. This is also assigned as error. The purpose of the statute was to enable the party to obtain from his opponent a disclosure " of facts and documents material to the support or defense of the action" (§ 1661, Code Proc.), and when the answers are so made and returned they do not constitute a part of the pleadings, neither do they become evidence for the party so answering, unless they are offered by the adverse party, who is also permitted by statute to rebut them by adverse testimony. Section 1664, Code Proc. In framing the answers to interrogatories under the statute,

the party so interrogated is entitled to the advantage
and assistance of counsel, and is allowed twenty days
in which to make such answers. The statute does not
in the case of a deposition permit the same to be read
at the trial if the witness is present and can take the
stand, and so in this case we think that, if the matters
embraced in the interrogatories were relevant and
material to the issue, the appellant should have taken
the stand as a witness and given his testimony before
the jury. But it is urged that such a course would
have been farcical, inasmuch as by § 1646 of the stat-
ute (Code of Procedure), a party in interest or to the
record shall not be admitted to testify in his own be-
half as to any transaction had by him or any state-
ment made to him by a deceased person, and counsel
insists that the "executors had not the right, even
had they so desired, to waive this statutory provision."
We find it difficult to reconcile these contentions of
counsel. In the first place it is insisted that the in-
terrogatories and answers became testimony, and in
the next breath it is urged that it would have been
useless to have called appellant as witness, because
under § 1646, *supra*, in an action or proceeding against
an executor, a party in interest or to the record is not
permitted to testify, etc., and that this provision is
mandatory and cannot be waived. It would seem
that this latter contention, if upheld, would exclude
these answers as testimony, if they related to "any
transaction had by him with, or any statement made
to him by, such deceased." Nothing contained in
§ 1646 prevented his being examined at the trial as an
ordinary witness upon all matters excepting transac-
tions and statements had with the deceased, and if the
matters embraced within the answers related to sub-
jects concerning which the law, from considerations

of public policy, would have prevented the appellant
from testifying at the trial, it would seem to require
no argument to demonstrate that like consideration
demanded that the answers should be excluded. These
respondents, as executors, were entitled to possess
themselves of every means to enable them and their
counsel to intelligently conduct the defense of the ac-
tion, and it would seem unwise to hold that they might
not take these answers for their guidance except at
the peril of the answers becoming evidence. None
of the cases cited by the appellant are authority for
such answers being received as evidence under the
circumstances of this case. *Rice v. Motley*, 24 Hun,
144, presented a very different state of facts. In that
case "Each party procured the examination of his
adversary before the trial. Before the trial Motley
died, and the action was continued in the name of his
executors. At the trial Thomas W. Rice was living
and was a witness in his own behalf. *He could not
then testify to any personal transaction with Motley under
§ 829 of the Code of Civil Procedure*. He then offered
*in evidence* his own examination taken at the instance
of Motley, and when both were living, and this was
rejected," and the court held that the rule was error,
saying that the "reason of the rule excluding such
testimony is wanting. When the deposition was taken,
Motley was alive to cross-examine and to give testi-
mony in his own behalf in opposition to that of the
plaintiff." We think that the ruling complained of
was right, and what was said by this court in *Denny v.
Sayward*, 10 Wash. 422 (39 Pac. 119), is inapplicable
to the present case.

3. On the trial the court admitted as standards for
comparison certain bank checks and other writings
containing the signatures of Kenyon, the genuineness

of which signatures is in nowise disputed or denied by the appellant, and experts were called and permitted to institute comparisons between such genuine signatures and the signature to the note in question. The appellant insists that this was error, contending for the rule that no writing can be used as a standard of comparison in the case unless it has been previously admitted for some other purpose, and in support of this rule many cases are cited by the learned counsel. But policy and necessity have led to the modification of this rule so that today, in a great many of the states of this country and by act of Parliament in England, it is in substance provided that

"Upon the question as to the genuineness of a signature, the genuine signature of the same person to a paper not otherwise competent evidence in the case, is admissible to enable the court and jury by a comparison of the hands, to determine the question." *Moody v. Rowell*, 17 Pick. 490 (28 Am. Dec. 317); *Woodman v. Dana*, 52 Me. 9; *State v. Hastings*, 53 N. H. 452; *Tyler v. Todd*, 36 Conn. 218; *Calkins v. State*, 14 Ohio St. 222; *Bragg v. Colwell* 19 Ohio St. 407; *Holmberg v. Johnson*, 45 Kan. 19 (25 Pac. 575); *Morrison v. Porter*, 35 Minn. 425 (59 Am. Rep. 331, 29 N. W. 54); *Farmers' Bank of Lancaster v. Whitehill*, 10 Serg. & R. 110; *Eborn v. Zimpelman*, 47 Tex. 503 (26 Am. Rep. 315; *Phillips v. State*, 6 Tex. App. 364.

and such we think is the trend of modern authority.

Chief Justice SHAW in delivering the opinion in *Moody v. Rowell, supra*, says:

"It seems to be difficult to distinguish in principle, between the case of a paper admitted or proved to be genuine, given in evidence for another purpose, and a paper, the genuineness of which is equally well established, when offered for this express purpose. In both cases the result depends upon skill and judgment in making the comparison and discovering the resemblances and differences."

4. There was testimony at the trial tending to show that the consideration for which this note was given was principally legal services rendered to the said Kenyon by the appellant. For the purpose of showing the improbability of the deceased's allowing any such sum to the appellant for legal services, and as further tending to show that such services, if in fact any were rendered, were unimportant, and the estimate in which deceased held appellant as an attorney, the respondents were permitted by the trial court over the objection of the appellant to give in evidence statements made by the deceased to different witnesses, occurring at about the date of the note. We have examined the various statements to which objections were made and think that no reversible error was committed in permitting them to be given. *Andrews v. Hayden's Admrs.*, 88 Ky. 455 (11 S. W. 429). The very nature of the case required of the trial court that great latitude be allowed counsel in the examination of witnesses and a wide range in the introduction of testimony. Such is the rule in ordinary cases where fraud is alleged and all of the parties to the transaction alive and competent to testify.

5. Finally it is urged that the verdict is contrary to the evidence. It appears from the record that the deceased was a man of means and by the testimony of bankers and reliable witnesses it was shown that his note for the amount here involved would have been bankable paper at the banks in the city of Seattle in which the parties resided, at almost any time after the date of its purported execution; it further appears that the deceased was a prudent, cautious man; that the appellant was a man of limited means and in embarrassed circumstances financially, frequently (presumably impelled by necessity) negotiating loans for

trifling and insignificant sums, a course of conduct entirely inconsistent with the idea that he lawfully held and owned the genuine note of the deceased, which could so easily have been converted into money. Further it was shown that prior to July, 1888, the appellant resided in the city of New York, where he was engaged in the practice of his profession, that at or about that time he wrote to the deceased requesting the loan of $500.00 to enable him to secure a location at some point on the Pacific Coast. This sum, it appears, was furnished to him by the deceased, and appellant's note therefor was found among deceased's papers and effects. These and many other facts and circumstances which appear in the record, but which we need not stop to consider, are sufficient to forbid that we should interfere with the verdict, upon the assumption that it is contrary to the evidence. The trial was protracted, the testimony voluminous, the charge of the court to the jury clear and comprehensive, and we are unable to discover from the record that any reversible error was committed.

The judgment will therefore be affirmed.

HOYT, C. J., and ANDERS and SCOTT, JJ., concur.

DUNBAR, J. (*dissenting*). I cannot agree with the conclusion reached by the majority, that no reversible error was committed by the trial court in the trial of this cause. It is doubtful to my mind if the court should have permitted the testimony of the habits of the plaintiff to be given in evidence in this case, for the purpose of showing the improbability of his employment by a man of Kenyon's character; but certainly the limit was passed when witnesses were allowed to testify as to Kenyon's declarations concerning this alleged employment. Shepard testified, over the ob-

jection of appellant, that Kenyon had informed him just before the date of the note in suit, which was a note alleged to be for an attorney's fee, that he had settled with all of the attorneys whom he had employed previous to that time. This was in substance introducing the statement of Kenyon that he did not owe the plaintiff anything at the time the note was given. The witness Whittlesey was allowed to testify as to conversations between himself and Kenyon, the decedent, concerning the collection of rents, and detailed Kenyon's expressed reason for the employment of Whittlesey, and his expressed opinion as to the ability of the plaintiff, testifying that the decedent had said that the plaintiff was only a "jack-leg lawyer," and other testimony of like character; all of which was objected to and which the court was moved to take from the jury. These declarations of the decedent are purely and simply declarations of the decedent in his own interest, and they were introduced for that purpose, and no doubt largely influenced the jury in coming to the conclusion that this note was a forgery.

The court, in its opinion, passes this assignment of error with the remark that, " we have examined the various statements to which objections were made and think that no reversible error was committed in permitting them to be given;" citing *Andrews v. Hayden's Admrs.*, 88 Ky. 455 (11 S. W. 428), which was cited by the respondents in support of the admission of this testimony and in favor of the proposition that the nature of the case required of the trial court that great latitude be allowed counsel in the examination of witnesses, and a wide range in the introduction of testimony. An examination of that case convinces me that it does not touch the case in point. In the first

place, there was no such testimony admitted in that case, and the main objection was simply as to the order of the proof. The court in its opinion says: "There was no competent testimony offered that was excluded by the trial judge, and the mere order of proof could not have prejudiced the appellant." Again, that case was tried by the judge and not by a jury, and referring to testimony which was not admissible, the supreme court bases its refusal to reverse on this fact, and says: "This testimony could not have controlled the trial judge in his decision of the case, and we are satisfied, with all of the facts before him, he must have refused to consider testimony which was incompetent, and considered alone that which enlightened him on the issue. . . . The experience of every one familiar with the trial of such cases, where the law and facts are submitted to the court, has taught him that much evidence is often introduced that the trial court would not permit to go to the jury, because of the ability of the judge to take the grain from the chaff and to decide the case alone upon the law and such testimony as is proper to be considered. If the errors committed were such as would likely have controlled the court in its decision, another trial would be granted;" showing conclusively that, even under the facts in that case, if the testimony admitted had gone to a jury, the court would have considered its admission reversible error.

Nor do I think that any case can be found sustaining the introduction of testimony which is so purely hearsay as the testimony introduced in this case. It is a universal rule, and I think without any exception, that the declarations of a decedent in favor of his own interests cannot be admitted, and only those declarations can be admitted which are against his

interests. This court has passed squarely upon this proposition in the case of *Reese v. Murnan*, 5 Wash. 373 (31 Pac. 1027), where the estate of the deceased Murnan was charged by the plaintiff Reese with a resulting trust in real property which Murnan had purchased in his own name, and which Reese claimed to ·have furnished him money for. In the course of its opinion the court said: "The defense sought to show that Murnan had made other declarations to other witnesses that Reese had no interest, but they were not permitted to do so. We know of no rule of law that would admit such declarations;" citing *Wilson v. Patrick*, 34 Iowa, 362, where the court tersely laid down the rule as follows:

"Defendants introduced evidence of the statements of Joseph A. Blackburn, to the effect that he owned the land absolutely. This evidence is clearly inadmissible. Declarations made by him in support of his absolute interest in the lands may not be received, while admissions to the contrary effect are competent evidence."

The statute, in the interests of justice and of fair play, has provided that the plaintiff cannot testify as to any transactions had by him with, or any statements made to him by, the deceased, the theory of the law being that, the mouth of the deceased being closed by death, the law should close the mouth of the claimant. But, under the rule adopted by the court in the trial of this cause, the mouth of the claimant is closed while the deceased is allowed to testify, by the rehearsal of his statements made to others, which is in effect the introduction of testimony that cannot be even subjected to the test of cross-examination.

I think the admission of this testimony and the refusal of the court to take it from the jury was error, and prejudicial error, and that for that reason the judgment ought to be reversed and a new trial granted.