## SMITH v. HANSON.

No. 1918. Decided July 29, 1908 (96 Pac. 1087).

1. EVIDENCE—DECLARATIONS BY DECEDENT—ADMISSIBILITY. Declarations, verbal or written, are admissible, when relevant to the matter at issue when declarant is dead, when the declaration was, at the time it was made, against a pecuniary or proprietary interest of declarant, when it was of a fact in relation to a matter of which he was personally cognizant, and when he had no probable motive to falsify the fact declared, which is generally shown by proof that it was made ante litem motam.

2. Same. Declarations otherwise admissible are not inadmissible because declarant was in privity with the party offering the declarations.

3. Same. Declarations by a father, who had conveyed land to a daughter, that he had not started a suit to cancel the deed and that he had no knowledge of such suit, made about the time a suit to cancel the deed was brought, and shortly thereafter, are declarations of facts presumably within the knowledge of the declarant, and are relevant to the matter at issue in an action by an attorney for services rendered in such suit.

4. Same. In the absence of a statute, declarations by a decedent, to be admissible, must be against declarant's pecuniary or proprietary interest, and such interest must be clear and undoubted.

5. Same. Declarations by a father, who had conveyed land to a daughter, that he had not started a suit to cancel the deed and that he had no knowledge of such suit, made about the time a suit to cancel the deed was brought, and shortly thereafter, were not, at the time when made, against the father's proprietary and pecuniary interest, for the declarations do not show that he did not claim any interest in the subject-matter of the action.

6. Same—Comparison of Handwriting—Documents—Admissibility. In the absence of a statute, where the genuineness of handwriting is involved, documents not otherwise admissible may be received in evidence for the sole purpose of furnishing a standard of comparison, provided their introduction will not raise collateral issues as to their genuineness, and on such question much must be left to the sound discretion of the trial court.[1]

7. Same. In an action involving the genuineness of handwriting, the exclusion of documents offered for the sole purpose of furnishing a standard of comparison was not erroneous, where the genuineness of such documents was not admitted by the adverse party, who might dispute their genuineness.

8. Executors and Administrators—Actions—Judgments—Validity. Under Revised Statutes 1898, sec. 3862, providing that a judgment against an executor or administrator on a claim for money against the estate must be that the executor or administrator pay in due course of administration the amount due, etc., a judgment against an administrator on a claim against the estate is improperly entered against him personally.[2]

---

[1] Tucker v. Kelley, 8 Utah 11, 28 Pac. 870.
[2] Clayton v. Dinwoodey, 33 Utah 251, 93 Pac. 723.

APPEAL from District Court, Third District; T. D. Lewis, Judge.

Action by H. A. Smith against Emma Hanson, administratrix of John Peter Johnson, deceased. From a judgment for plaintiff defendant appeals.

MODIFIED AND AFFIRMED.

*Bailey & Vickery* and *E. A. Walton* for appellant.

*Edwards, Smith & Price* for respondent.

STRAUP, J.

In 1892 and 1895 John Peter Johnson, since deceased, conveyed to his daughter, Emma Hanson, two parcels of land, one a five-acre tract, the other a ten-acre tract, situate in Salt Lake county. It is claimed by the respondent, who is an attorney at law, that he was employed to commence proceedings in the name of the deceased and for his benefit to cancel the deeds. Such an action was commenced in July, 1900, and thereafter prosecuted by him, which resulted in a judgment canceling the deeds. On appeal the judgment was modified, canceling the deed to the ten-acre tract only. The deceased died in August, 1901, after the judgment was rendered in the lower court, but before the appeal was taken to the Supreme Court. Thereafter the respondent brought this action against Emma Hanson, the administratrix with the will annexed of the deceased's estate, to recover compensation for his services. The defendant denied that the respondent was employed at the instance or request of the deceased, and alleged that he was employed by her brothers and sisters, who desired the cancellation of the deeds, and that the action was prosecuted for their benefit, and not for the benefit or at the request of the deceased. The jury rendered a verdict for the plaintiff. The defendant appeals.

When the action was commenced to cancel the deeds, the deceased was more than eighty years of age. He was ill and feeble, and unable to leave the house. The respondent had

no personal transactions with the deceased. It was not claimed that he was employed by him personally, but by some of his sons and daughters, whom the deceased had authorized to employ counsel to commence the action. It was testified to by some of them that the deceased requested one of his sons to consult a lawyer and ascertain if there was "any show to recover his property." This son, together with some of his brothers and sisters, consulted the respondent, who advised them and told them to communicate with their father. They did so, and afterwards employed the respondent to commence and prosecute the suit. They further testified that such fact was communicated to the deceased, who approved of it, and that, when the judgment was rendered canceling the deeds, the deceased expressed himself well pleased with the result. The appellant gave evidence tending to show that the deceased, since the execution of the deeds, resided with her and was cared for by her; that shortly before the commencement of the action her brothers took the deceased against his will from her house to the home of one of her brothers, where neither she nor immediate members of her family were permitted to see him until the suit had been instituted. In support of her defense that the deceased had not authorized the bringing of the action and had not authorized his sons to employ counsel, the defendant offered to prove statements or declarations made by the deceased, not in the presence of the respondent, about the time the suit was commenced and shortly thereafter, to the effect that he was "not going to sue" his daughter, that he had not started the suit and that he did not know anything of such a lawsuit having been started. The testimony was excluded by the court on the ground that it was hearsay and self-serving. This ruling presents the principal question for review.

The appellant urges that the declarations, when made, were not self-serving, but disserving, and were therefore exceptions to the giving of hearsay testimony. The general rule is that declarations, whether verbal or written, made by a person as to facts presumably within his knowledge, are an

exception to the hearsay rule, and admissible in evidence, if relevant to the matter of inquiry, when it appears that the declarant is dead, that the declaration was, at the time when it was made, against a pecuniary or proprietary interest of the declarant, that it was of a fact in relation to a matter of which he was personally cognizant, and that he had no probable motive to falsify or misstate the fact declared, which is generally shown by proof that it was made *ante litem motam.* From a reading of section 435, 1 Elliott on Evidence, it seems the rule is there stated that declarations against interest are those which are made by strangers to the litigation, and not those made by persons in privity with the parties. It is there said:

"Declarations against interest are distinguished from admissions and confessions, in that they are made by strangers, against their interest, rather than declarations made by a party or privy, against his own interest, and received as direct evidence of the facts declared, while admissions and confessions are received more as waivers of the proof of certain facts. Admissions are generally declarations of parties and those identified in interest with parties, and the declarant may or may not be dead, while these are declarations made by strangers since deceased; that is, by persons not in privity with the parties to the proceedings." The rule is stated to the same effect in 4 Enc. Ev., 87-89, and in 2 Jones on Ev., sec. 327.

If it should be said that declarations against interest, as distinguished from admissions, are admissible as such only when made by strangers since deceased, and not by persons since deceased in privity with the parties then the evidence was properly excluded for it is apparent that the declarant was in privity with the party offering the testimony. If these text-writers had said that declarations against interest are admissible, not only when made by persons since deceased and in privity with the parties, but also when made by persons since deceased who were strangers to the litigation and to the parties such statement, we believe, would be more in harmony with the adjudicated cases. Probably that is all that is meant by the expressions of the authors referred to. We have been cited to no case where a declaration against in-

terest was excluded because made by a person in privity with
the parties. To the contrary, we find numerous cases where
such a declaration of a person since deceased was held prop-
erly admitted, though the declarant was in privity with the
party litigant offering the declaration, and where it was re-
ceived, not as an admission of one identified in interest with
a party litigant, but as direct evidence of the fact declared.
The following are a few of such cases: *Coffin v. Bucknam,*
12 Me. 471; *Humes v. O'Bryan & Washington,* 74 Ala. 64;
*County of Mahaska v. Ingalls,* 16 Iowa 81; *German Ins.
Co. v. Bartlett,* 188 Ill. 172, 58 N. E. 1075, 80 Am. St.
Rep. 172; *Lehman v. Sherger,* 68 Wis. 145, 31 N. W. 733;
*Taylor v. Witham,* 3 Ch. D. 605.

It is therefore necessary to inquire further into the matter.
The declarant was dead. It may well be said that the facts
declared were presumably within the knowledge of the de-
ceased. They were relevant to the matter of inquiry. They
were made *ante litem motam.* The further question is:
Was it sufficiently made to appear that the declarations were
against the interest of the declarant at the time when made?
The authorities generally hold that to be against interest the
declaration must be against a pecuniary or proprietary in-
terest of the declarant. While Mr. Wigmore, in his work on
Evidence (volume 2, section 1476), says that the doctrine
should be extended to include a penal interest and all declara-
tions of facts against interest of a deceased person never-
theless he concedes that the cases have limited the admissi-
bility of the declarations to a pecuniary or proprietary in-
terest at the time when made. He asserts however, that such
a limitation was fixed arbitrarily. Whatever force there may
be to the suggestions of Mr. Wigmore, it cannot be doubted
that the rule is firmly established in England and in this
country that, in the absence of a statute, the declaration, to
be admissible, must be against either a pecuniary or a pro-
prietary interest. Quite true, in the case of *State v. Alcorn,*
7 Idaho 599, 64 Pac. 1014, 97 Am. St. Rep. 252, it was
held that it was sufficient if the declaration tended to show
"a state of facts inconsistent with" the declarant's "obser-

vations of the rules of chastity," and that no "beneficial purpose of the deceased could be served by the declaration." In the case of *Moore v. Palmer,* 14 Wash. 134, 44 Pac. 142, the declarations of a deceased person, which were not even disserving, but wholly self-serving, at the time when made, were admitted, in favor of his administrator, in an action brought against him to recover for professional services rendered the deceased to show "the improbability of the deceased's paying any such sum to the appellant for legal services, and as further tending to show that such services, if any in fact were rendered, were unimportant, and the estimate in which deceased held appellant as an attorney."

If we correctly understand the questions involved in these cases, we believe the rulings there made to be against the clear weight of authority. In a sense it may be said that the declarations of the deceased, when he declared that he had not started the suit, that he was not going to sue his daughter, and that he had no knowledge of such a suit having been started, were, at the time when made, against some sort of the declarant's interest. At least, it cannot well be said that they were wholly self-serving at the time when they were declared. But we are of the opinion that they were not against a pecuniary or a proprietary interest. While "courts will not nicely weigh the pecuniary interest to any extent" (1 Elliott on Ev., section 441), still "the pecuniary (or proprietary) interest of a party must be clear and undoubted, as this is the main ground upon which the admissibility of this species of evidence rests." (*County of Mahaska v. Ingalls, supra.*) It is said by the appellant that "the declarations and the facts implied therefrom show a disclaimer of proprietorship in respect to the subject-matter of that suit," and were against the testator's proprietary and pecuniary interest at the time, and to the extent of the value of the property, which was shown to be $3,250. A person's declaration that he had not authorized the commencement of an action concerning property in which he has an interest, or that he knew nothing of such a suit, does not show that he did not

claim any interest in the subject-matter of the action; that is to say one may consistently claim full and complete ownership of a thing and at the same time declare that he had not authorized any action brought to assert or maintain his rights with respect to it. The declarations here did not tend to lessen the pecuniary value of the deceased's property, or impose upon him a pecuniary responsibility; nor did they tend to cast doubts upon the ownership of his property. (1 Elliott on Ev., section 441.) We are therefore of the opinion that the evidence was properly excluded.

Direct evidence was given on behalf of the respondent that the deceased subscribed his name to and verified the complaint filed in the action to cancel the deeds. The appellant gave direct evidence that the name of the deceased which was signed to the complaint was not in his handwriting. As further proof of such fact the appellant offered in evidence the signatures to two mortgages and a deed, proved to be in the handwriting of the deceased, for the purpose of furnishing a standard with which to compare the disputed signature to the complaint, and also produced an expert on handwriting by whom the appellant offered to show that the signature to the complaint and the signatures to the mortgages and deed were not written by the same person. These offers were rejected on the ground that the disputed signature could only be compared with some instrument already in evidence for some other purpose, or which was otherwise before the court as a part of the record in the case, and that it was not competent to put in evidence some document as a standard of comparison which was not otherwise relevant to some issue in the case. Complaint is made of these rulings.

Upon this question there is much conflict in the authorities. See notes in 62 L. R. A. 817, 63 L. R. A. 163, 427, 937, 963. It seems that in the courts of common law the decisions have not been uniform. It was held by the older decisions that a comparison between the disputed writing and other writings already properly in evidence could be made by the jury, but not by witnesses, except when the witness had previous knowledge of the person's handwriting and

made such comparison in confirmation of his own testimony. With this exception comparison of handwriting by witnesses was not permissible at common law. In 1854 Great Britain by statute authorized proof of handwriting to be made by comparison, both by witnesses and jury, of a disputed writing with any writing proved to the satisfaction of the judge to be genuine. Many of the states have similar statutes authorizing the comparison to be made by any writing proved to be genuine, or, as some of the statutes provide, proved to be genuine to the satisfaction of the judge. We have no statute on the subject. In 2 Elliott on Ev., section 1105, it is said:

"In those jurisdictions where there are no statutes regulating the admission of opinions as to a comparison of handwriting, three distinct rules seem to prevail. In a few jurisdictions the rule is that the opinions of experts based on any comparison is improper; in other jurisdictions the rule is that opinions are admissible in case the writings to be compared are in evidence for another purpose and admitted to be genuine; and the third rule is that opinions of experts are admissible as in the rule immediately preceding, and, in addition, on writings whose genuineness has been proved on the trial for the express purpose of comparison."

In 6 Enc. of Ev., p. 410, the rule is stated as follows:

"Whether, in the absence of any statute on the subject, writings not already in evidence in the case, and which are not admissible in evidence for other purposes, although they may be genuine, can be received in evidence for the sole purpose of furnishing an exemplar or standard of comparison, there is much conflict in the authorities. Many of the courts hold that such writings cannot be received for that purpose. Other courts, however, hold that, even in the absence of any statute where the genuineness of handwriting is involved, well-tested standards of the writing of the person whose writing is in question may be introduced for the sole purpose of comparison with that which is disputed, although they are otherwise irrelevant."

To the first proposition cases are cited from six different jurisdictions; to the last proposition from sixteen different jurisdictions, including Utah.

We quite agree with the text as stated in 15 A. & E. Ency. L. p. 269 to the effect that the general tendency of the recent decisions is to a relaxation of the earlier rule, prevailing in some jurisdictions, excluding the evidence unless the standard of comparison is some document already properly in evidence for other purposes and proved to be genuine, or is otherwise properly before the court as a part of the record, and to an adoption of the rule admitting irrelevant papers as a standard of comparison, if they are admitted or conceded, or otherwise proved, to be genuine, and it appears that their introduction will not calculate to raise collateral issues as to their genuineness. This we believe is the doctrine as stated in the case of *Tucker v. Kellogg,* 8 Utah 11, 28 Pac. 270. The real test, we think, in determining the admissibility of a document as a standard of comparison, is whether the introduction of the instrument is calculated to raise a collateral issue as to the genuineness of the signature offered and whether the selection of the specimen was fairly made. On such a question much must be left to the sound discretion of the trial court. We cannot say that the introduction of the documents was not calculated to raise such an issue. The offered documents were not conceded nor admitted to be genuine. While their genuineness was testified to on behalf of appellant, it is not made to appear that, had they been received in evidence, such testimony would not have been disputed by testimony on behalf of respondent; nor was it made to appear that he was precluded to deny them. We think no error was committed in the rulings.

It is further claimed that the court erred in entering a personal judgment against the appellant. Under the statute (section 3862, Rev. St. 1898, a judgment against an executor or administrator upon any claim for money against the estate of a deceased person only establishes the claim in the same manner as if it had been allowed by the executor or administrator and the judge, and the judgment must be that the executor or administrator pay in due course of administration the amount ascertained to be due and that no execution must issue upon such judgment nor shall it create any

lien upon the property of the estate or give to the judgment creditor any priority of payment. The judgment as entered was not in compliance with the statute, and for that reason was erroneous. (*Clayton v. Dinwoodey et al.,* 33 Utah 251, 93 Pac. 723.)

The case is therefore remanded to the trial court, with directions to vacate the judgment as entered, and to enter judgment in favor of respondent in manner as provided by the statute above referred to. Neither party is given costs on appeal. With such modification, the judgment is affirmed.

McCARTY, C. J., concurs.

FRICK, J. (concurring).

I fully concur with my Brother, Justice Straup, in his conclusions, namely, that the declaration in question was not one which was against the interest of the deceased, and that the court's ruling excluding the mortgages was proper. I therefore concur in the result reached.

Notwithstanding my high regard for the judgment of my Brother, I entertain much doubt upon the proposition whether, in view of the issue in this case, the declarations of the deceased were admissible, even though such declarations, when made, were against his interest. The grounds upon which declarations against interest are admitted are well and clearly stated in the opinion written by my Brother. One of those grounds is that the declaration sought to be admitted must, in the language of the opinion, be of "a fact in relation to a matter of which he (the deceased) was personally cognizant." What did the declaration sought to be admitted in this case relate to? It related solely to the personal relationship of the deceased and respondent; that is, the relation of attorney and client, or agent and principal. The issue, and the only issue, contested was whether the respondent was the attorney of the deceased when respondent rendered the services for which the action was brought. If respondent was deceased's attorney, then the estate is liable to him for the value of his services; and if he was not, then

the estate is not so liable. By virtue of our statute relating to evidence in decedents'. estates (section 3413) the respondent was incompetent to testify to any transaction or communication he might have had with the deceased, and was further incompetent to testify to any "matter of fact whatever which must have been equally within the knowledge of both the witness  .  .  .  and such deceased." If, therefore, it be conceded, as it must be, that the declaration related to a fact which was within the knowledge of the deceased (for, if it was not, it was not within the rule), it must also be conceded, I think, that it must have been within the knowledge of respondent, since it directly related to a matter of personal relationship between deceased and respondent. Respondent, therefore, was prohibited from testifying against the personal representative of the deceased, the appellant in this case. It occurs to me that the underlying purpose of the section quoted from above was to establish equality between the deceased person and the one who has some claim against his estate growing out of some transaction or business relationship which arose during the lifetime of the deceased. If this is not the purpose, I know of none. Under the rule adopted in this case if the sole question is whether the relationship of principal and agent between a living and a deceased person existed or not, the declarations of the deceased person may be admitted to disprove the agency while the lips of the one who is still alive are sealed. By permitting this, is not the much vaunted equality destroyed, and is not the personal representative of the deceased given an advantage, when the purpose of the statute is to destroy all advantages of this character? As I view it, where the purpose of a statute is to establish a rule of equality between litigants, the courts should so construe and apply the statute as to maintain that equality, both for and against all alike.

In addition to the foregoing, if such declarations are admitted upon such an issue, then the law permits agency to be disproved by the declaration of the principal, while under no circumstances of which I am aware does it permit the agency to be established by the mere declaration

of the agent. Frankness, however, compels the statement that neither my Brother Straup nor myself have been able to find any authorities which either discuss or sustain my views. In this regard the most that can be said is that neither the text-writers nor the cases discuss the question from the point of view I have suggested, and that therefore there is no authoritative expression either way upon the subject. As a general rule it is safe to adhere to the rule that, where a question concerning a rule of evidence has never been discussed, it is well enough to let the established rules prevail, although they may not always reflect exact equality or justice. I cannot, however, bring myself to submit to the rule announced in this case without expressing my doubts of its correctness. Moreover, I cannot yield my assent to the proposition that, because a question has never been discussed or considered by the courts, therefore it never should be. In view of the sweeping provisions of our statute, referred to above and for the other reasons briefly suggested, I take this occasion to express my doubts as to whether any of the declarations of a deceased person are admissible when the sole issue is that of principal and agent, which is claimed to have existed between a living claimant and a deceased person.