14　305
15　466
15　467

14　305
16　240
18　316

14　305
24　224

14　305
25　92

# T. A. WALLEY, RESPONDENT, *v.* THE DESERET NATIONAL BANK, APPELLANT.

BILLS AND NOTES—EXTENSION OF TIME—CONVERSION—WHAT IS—
MEASURE OF DAMAGES—EVIDENCE—INSOLVENCY—WITNESS—
EXAMINATION—FINDINGS—SUFFICIENCY—APPEAL—
REVIEW.

1. A judgment must find its support in the actual state of facts ascertained and reported by the judge in his findings, or fail. No aid can be derived from facts not embodied in the findings.

2. The payment of interest in advance, on a note, by the principal to a creditor, is of itself, without more, sufficient *prima facie* evidence of an agreement to extend the time of payment for the period for which the interest is paid. The payment in advance presupposes that delay of payment of the principal is to be given for that time. The consideration for an agreement for delay in payment is implied from the transaction, if not sufficiently expressed. But this presumption may be overcome by evidence of a refusal to extend, demand of payment, or any other evidence showing that delay or extension was not agreed upon.

3. Section 9, art. 8, of the constitution of Utah, provides that "in equity cases the appeal may be on questions of both law and fact; in cases at law the appeal shall be on questions of law alone." *Held* that, when the testimony presents a question of fact, and the court finds the facts against one of the parties, such findings will not be disturbed by the supreme court if there is evidence to support the finding.

4. In an action in trover, for the conversion of promissory notes on December 16, 1893, wherein defendant was confined in his proof of the value of the notes at a date prior to the alleged date of conversion, the plaintiff, in his rebutting case, introduced testimony, under objection, that defendant sold the judgment obtained upon the notes, after the alleged conversion, demand, and refusal, and after commencement of suit,

14 UTAH—20

in January, 1894, for their face value.  *Held*, that the owner is *prima facie* entitled to recover their face value,—that is, their presumptive value,—and he will be entitled to recover their actual value, if shown.  But the defendant has the right to show, in reduction of damages, the payment in whole or in part, the inability of the maker to pay, a release, invalidity of the instrument, or any other matter, which would legitimately affect or diminish their value, and that the proper measure of damages is the cash value of such notes at the time of the conversion, with interest to the time of trial.  *Held*, further, that the fact that the purchaser of the notes sold the judgment which he had obtained upon them six months after the actual conversion, and after the commencement of the action, for its face value, would not take the case out of the rule, and that it was error to admit such testimony, especially as the undisputed facts show that a wrongful conversion of the notes occurred on June 16, 1893, more than six months before the sale of the judgment, at a time when the defendant traded the notes for bank stock in violation of the condition of the contract, which provided that the notes should be sold at public or private sale in case of default in payment of the principal note, for which payment the notes in question were pledged.

5. After a witness has been examined in chief, and given testimony tending to show his solvency at a given time, it is error to refuse the opposite party the right, on cross-examination, to show, by the witness, that at a certain time, during the period referred to, he had stated, to a certain person named, that he had no property his creditors could reach, and it would do no good to sue him.  Such testimony would affect the credit of the witness, and tend to contradict and qualify his testimony in chief, and was also proper, laying the foundation for impeachment.

6. Neglect and refusal of a maker to pay his note at maturity tends to show his inability to pay, and affects the value of his note.

7. A proper return of an execution *nulla bona*, issued upon a valid judgment rendered against the maker of a note, is *prima facie* evidence of insolvency of the maker.

8. When promissory notes were given in pledge to secure payment of plaintiff's note at maturity, with a right to sell the

pledged notes on default of payment, at public or private sale, without notice, and it appears that, before the principal note became due, the pledgee traded the pledged notes for bank stock, *held*, that this amounted to a wrongful conversion of the notes at the time the trade was made.

9. The refusal to surrender possession in response to a demand, is not, of itself, a conversion. It is only evidence of a conversion, and, like other inconclusive acts, is open to explanation.

10. A special finding that certain notes had no market value at a given time, when all the testimony given tended to show the notes had a market value of a specified amount at that time, is not supported by the evidence.

11. A general finding that the notes in question were worth their face value on a given date, and a special finding that such notes had no market value on that date, when the testimony supports the latter finding, renders the finding objectionable. Facts of an equivocal import cannot well be reduced to a certainty by conjecture. A finding should afford the means of its own interpretation, and for fixing its own sense, and should be sufficiently distinct and definite to enable the court to decide upon the judgment.

12. When promissory notes have a market value, it is competent to show what the cash market value was at the time of the conversion, as bearing upon and tending to fix their actual value. This rule applies to promissory notes and choses in action having a market value, the same as to other personal property.

(No. 741. Decided Dec. 9, 1896.)

Appeal from the Third District Court, Salt Lake county. Hon. John A. Street, *Judge*.

Action by T. A. Walley against the Deseret National Bank for the conversion of two promissory notes deposited as colatteral security for a loan. From a judgment for plaintiff, defendant appeals. *Reversed.*

*Young & Moyle* and *C. S. Varian*, for appellant:

The mere payment of interest in advance is not of itself sufficient to extend the time of the payment of the principal of the note. *Oxford Bank* v. *Lewis*, 8 Pick. 457; *Blackstone Bank* v. *Hill*, 10 Pick. 129; *Bank* v. *Weller*, 17 Pick. 150; *Dow* v. *Tuttle*, 4 Mass. 414; 3 Randolph Com. Paper, secs. 958, 961, 963; 10 Pet. 257; *Vare* v. *Woodward*, 29 O. St. 245; 78 Ill. 446; 17 Wend. 501; *Bank* v. *Rawlins*, 13 Me. 202; Chitty on Bills, 370, 371, 379; 14 Peters 202, 607; *Davy* v. *Prendergrass*, 5th Barn. & Ald. 187.

"Demand and refusal do not in themselves constitute conversion; but they are evidence of conversion at some previous period." *Wood* v. *Carson River Wood Co.*, 13 Nev. 61; *Whitman Co.* v. *Tritle*, 4 Nev. 497; *Earl* v. *Van Benson*, 2 Halst. 244; *Newsum* v. *Newsum*, 1 Leigh 86, 101; *Reford* v. *Montgomery*, 7 Ver. 411; *Hews* v. *McKinney*, 3 Mo. 382; *Cobb* v. *Wallace*, 5 Cole (Tenn.) 538; *Barker* v. *Lothrop*, 155 Mass. 376; *Donnahoe* v. *Williams*, 24 Ark. 264; *Perkins* v. *Barnes*, 3 Nev. 557; *State* v. *Patten*, 49 Me. 383; *Hardy* v. *Keeler*, 15 Ill. 152; *Galvin* v. *Smith*, 2 Fairfield (Me.) 28; *Hyde* v. *Noble*, 13 N. H. 494; *Freed* v. *Anderson*, 10 Mich. 357; *Soames* v. *Watts*, 1 Carr & Paine 400; *Yates* v. *Carnsew*, 3 Carr & Paine 100; 1 Chitty on Pleadings, 157, 158; *Woodbury* v. *Long*, 8 Pick. 543; *Tompkins* v. *Hale*, 3 Wend. 406; *Stanley* v. *Gaylord*, 1 Cush. 536; *Riley* v. *Boston*, 11 Cush. 11-14; 2 Addison on Torts 395.

Where there is no allegation in the complaint of the value of said notes, the market value has to be determined in regard to the real damage done plaintiff. *Galligher* v. *Jones*, 129 U. S. 193; *Baker* v. *Drake*, 53 N. Y. 211; 66 N. Y. 518; *Gruman* v. *Smith*, 81 N. Y. 25; *Colt* v. *Owen*, 90 N. Y. 368; *Wright* v. *Bank of Metropolis*, 110 N. Y. 237; *McEawan* v. *Morley*, 60 Ill. 32; *Kauntz* v. *Kirkpatrick*, 72 Penn. St. 376; 2 Benj. on Sales, 1017; Id. 35.

The fact that execution has been returned *nulla bona* is proof of insolvency. *Phillips* v. *Webster*, 85 Ill. 146; *Brown*

v. *Brooks*, 25 Pa. 210; *Buttram* v. *Jackson*, 32 Ga. 409; Rice, vol. 2, p. 220e and *f*; see 29 Kan. 689.

*Jones & Schroeder*, for respondent:

Payment and acceptance of interest constitutes of itself such an agreement for the extension of time until the expiration of the period for which interest is thus paid in advance.    *Warner* v. *Campbell*, 26 Ill. 286; *N. H. Savings Bank* v. *Fla*, 11 N. H. 341; *People's Bank* v. *Pearson*, 30 Vt. 715; *Lemon* v. *Whitman*, 75 Ind. 325; *Hollingsworth* v. *Tomlinson*, 108 N. C. 245; *Flynn* v. *Mudd*, 27 Ill. 327; 30 Miss. 436; 37 Ga. 384; 6 Bush. (Ken.) 556; 43 Ind. 393; 50 Ind. 378; 20 S. E. (Ga.) 266; 10 Humph. (Tenn.) 447; 10 N. H. 322.

In *Baker* v. *Drake* (53 N. Y. 216), which is the recognized leading case on the measure of damages, in an action like this, the court says:  "*An amount sufficient to indemnify the party injured for the loss, which is the natural, reasonable, and proximate result of the wrongful act complained of, and which a proper degree of prudence on the part of the complainant would not have averted is the measure of damages.*"    See 13 N. Y. Sup. 826, in cases.    *Green* v. *Boston R. R. Co.*, 35 Am. Rep. 371; *Ripley* v. *Davis*, 90 Am. Dec. 262.

MINER, J.:

On the 18th day of December, 1893, plaintiff filed his complaint for the alleged conversion by the defendant of two certain promissory notes, made by John Beck, one for $5,000, and one for $1,000, both dated April 1, 1892, payable April 1, 1893, and alleged that on the 16th day of December, 1893, he was the owner of said notes, and on that day defendant unlawfully disposed of and converted the same to its own use.    The defendant answered, denying plaintiff's ownership of the notes, or its conversion of

the same, and alleged that on September 6, 1892, plaintiff gave his note to defendant for $1,000, with interest at 1 per cent. per month, and secured the payment of the same by pledging the notes of Beck; that the note provides that, in case of default in payment, the defendant should sell said pledged notes at public or private sale, with or without notice, in payment of the $1,000 note; that said principal note fell due on April 1, 1893, and was not paid, and that on the 16th day of June, 1893, defendant sold said pledged notes to James T. Little, he being the highest bidder, for the sum of $1,000, which was credited upon plaintiff's note, and that afterwards Little tendered said notes to plaintiff on payment of the principal note; that the price for which the notes were sold on June 16, 1893, was all that they were worth in that year. The case was tried before the court without a jury, whereupon the court made its findings of fact and conclusions of law; and also special findings, and rendered judgment in favor of the plaintiff in the sum of $5,381.67, with interest thereon at 8 per cent. from December 16, 1893, amounting to the total sum of $6,376.37. From this judgment defendant appeals to this court.

In the course of argument, and in the briefs of counsel, the question as to the effect of the sale of the Beck notes to James T. Little, as an officer of the bank, is discussed to a considerable extent; but, upon an examination, we discover no finding that Little was an officer of the bank, or in any way connected with it at the time, and therefore refrain from passing upon the questions involved in that subject. The judgment must find its support in the actual state of facts ascertained and reported by the judge, or fail. No aid can be derived from facts not embodied in the findings. *Brown* v. *McHugh*, 36 Mich. 433.

The note of $1,000, given by plaintiff to the bank, September 6, 1892, due April 1, 1893, for which the Beck notes were pledged as security, gave the defendant the full authority to sell said Beck notes, at public or private sale, upon non-performance of the promise to pay at maturity, and without notice. The interest was paid upon the note to the 6th day of April, 1893. On April 27, 1893, plaintiff paid $10, and on June 3, 1893, $10, and both payments were made and indorsed as interest. On June 10, 1893, plaintiff paid $10 to defendant. The court found that the last payment paid the interest for the month of June, 1893, and that the time for the payment of the principal note was extended beyond the 16th day of June, 1893. On the 16th day of June, 1893, defendant sold or exchanged the Beck notes to Little for $1,000, and applied the same to the payment of plaintiff's note, and at once notified the plaintiff of the sale, and at the same time returned to the plaintiff $7 overpaid, which plaintiff refused to accept. On December 16, 1893, plaintiff made tender of the amount due on the principal note, and made demand for the Beck notes. The court found that the plaintiff was insolvent. This suit was brought on the 18th day of December, 1893. There is a conflict in the evidence as to the purpose of the last payment of $10. The court found that it was paid as interest, and that the note was therefore extended beyond the time when the bank sold the note to Little because of the non-payment of the principal note when due. The plaintiff testified, in substance, that he went to the bank on June 10, 1893, when he made the last payment of $10. The president, Mr. Hills, said " he wanted my note paid as soon as I could. Nothing was said about the extension of time when I made this payment. I had previously paid $10 at different times each month. At the last payment

I said, ' Here is the interest, Mr. Hills,' and he said, ' All right,' and took the money." Mr. Hills testified that, when the plaintiff made the last payment of $10, he told him he would endorse the payment, but would not extend the time. When the last payment was made, he says, " I told the plaintiff we would have to have the whole note paid or sell the collateral. Plaintiff replied that he was not prepared to pay the note then. I did not agree to extend the time of payment at any time. It was not the custom of the bank to extend payments without making an entry showing it." The court found that the time for payment of the plaintiff's note was extended beyond June 16, 1893. The only evidence to support this finding is that the payment of interest on June 10th was made in advance, which covered the period when the bank sold the collateral notes to Little, and that the interest so paid was at the rate of 1 per cent. per month, as borne by the plaintiff's note, before the same was due; plaintiff claiming that the note only drew 8 per cent. after it was due, and that the extra interest was a consideration for the extension. The decided weight of authority, and, it seems, the better reason, is that the payment of interest in advance on a debt by the principal to the creditor is of itself, without more, sufficient *prima facie* evidence of an agreement to extend the time of payment for the period for which the interest is paid. The payment in advance pre-supposes that delay of the payment of the principal is to be given for that time. The consideration for an agreement for delay in payment is implied from the transaction, if not sufficiently expressed. But this presumption may be overcome by evidence of a refusal to extend, demand of payment, or any other evidence showing that delay or extension was not agreed upon. Brandt, Sur. § 352; *Bank* v. *Truesdell;*

55 Barb. 603; *Walters* v. *Swallow*, 6 Whart. 449; *Warner* v. *Campbell*, 26 Ill. 286; *Bank* v. *Pearsons*, 30 Vt. 710.

The testimony offered on both sides left a question of fact, to be decided by the court. The court found the fact against the defendant.

Section 9 of article 8 of the constitution of Utah provides that " in equity cases the appeal may be on questions of both law and fact; in cases at law the appeal shall be on questions of law alone." While we might be able to reach a different conclusion from the trial court upon the correctness of this finding, yet, as the appeal brings up the question of law alone, and there is some evidence in the record tending to sustain the finding, we do not feel satisfied to disturb the finding on this subject.

The demand, refusal, and conversion are alleged to have been made December 16, 1893. The bank traded the notes June 16th. The defendant was limited in his proof of the market value of the notes and the insolvency of the maker to a period between the 16th day of June, and the 16th day of December, 1893, the date of the alleged conversion, and was precluded from showing their value or Beck's insolvency in 1894. The plaintiff, in his rebutting case, called Mr. Little as his witness, and, under objection that the testimony was incompetent, immate-rial, and irrelevant, was allowed to show that, after the suit was commenced, and after the alleged conversion, and on January 6, 1894, he sold the judgment he obtained upon the notes in question to a syndicate of people who purchased it at its face value in order to protect their interests in the property levied upon; the property levied upon being Beck's equity of redemption in the stock of a mine. Exception was taken to the admission of this testimony; also, to the refusal of the court to permit the defendant to show, on cross-examination of the same

witness, that Beck could not pay the judgment at this time, and that he was financially embarrassed, and that, but for the intervention of the syndicate named, the judgment would not have been paid. The question is, was the testimony of Little admissible as to these facts, occurring in January, 1894? In *Kennedy* v. *Whitwell*, 4 Pick. 466, the court held that, "in trover, the value of the article at the time of the conversion, with interest from that time to the time of the trial, is the measure of damages, and the facts, that before the conversion the plaintiff, as vendee, paid the defendant for the article, and the defendant, before the trial, re-sold it at an advanced price, do not take the case out of the rule." *Bates* v. *Stansell*, 19 Mich. 91. Sedgwick states the general rule to be: "In actions for the conversion of personal property, the measure of damages is the value of the property at the time of the conversion with interest to the time of trial." 2 Sedg. Dam. §§ 493-497; *Dows* v. *Bank*, 91 U. S. 618; *Tyng* v. *Warehouse Co.*, 58 N. Y. 308; 3 Suth. Dam. pp. 520-522, 482; *Robinson* v. *Hurley*, 11 Iowa 410.

For the conversion of money securities the owner is, *prima facie*, entitled to their face value,—that is, their presumptive value,—and he will be entitled to recover their actual value if shown; but the defendant has the right to show, in reduction of damages, the payment in whole or in part, the inability of the maker to pay, a release, invalidity of the instrument, or any other matter which will legitimately affect or diminish its value, and the proper measure of damages is the value of such securities at the time of the conversion, with interest to the time of trial. 3 Suth. Dam. pp. 520-522; 1 Sedg. Dam. §§ 256, 257; 5 Am. & Eng. Enc. Law, p. 40; *Stirling* v. *Garritee*, 18 Md. 468; *Insurance Co.* v. *Dalrymple*, 25 Md. 244.

So it is held that the market value of the stock at the

time of the conversion is the proper measure of damages. *Bank* v. *Boyd*, 44 Md. 47; *Sturges* v. *Keith*, 57 Ill. 451; *McKenney* v. *Haines*, 63 Me. 74; *Fisher* v. *Brown*, 104 Mass. 259; *Spencer* v. *Vance*, 57 Mo. 427.

In New York and several other states the old rule of assessing damages, in cases of conversion of stocks which have a fluctuating value, at the highest market price from the time of conversion to the time of trial, is held to be without reason; and the supreme court, in the case of *Baker* v. *Drake*, 53 N. Y. 211, has seen fit to change the rule, and hold that a fixed, unqualified rule, giving the plaintiff, in all cases of conversion of property, the highest market price from the time of the conversion to the time of trial, cannot be upheld upon any sound principle of reason or justice, and that such doctrine cannot be regarded as one of those settled rules to which the principles of *stare decisis* should apply, and that the market price of stocks from the time of sale to a reasonable time after notice of sale affords a complete indemnity, and is the proper measure of damages in such cases.

The supreme court of the United States, in *Galigher* v. *Jones*, 129 U. S. 193, a case appealed from the supreme court of Utah, reported in 3 Utah 54, hold, with New York, that, in trover for the conversion of stocks having a fluctuating value, the proper rule for damages is the highest intermediate value between the time of conversion and a reasonable time after the owner has received notice of it, to enable him to replace the stock. The court further says: " Other goods wrongfully converted are generally supposed to have a fixed market value at which they can be replaced at any time, and hence, with regard to them, the ordinary measure of damages is their value at the time of the conversion, or, in case of sale and purchase, at the time fixed for their delivery. But the

application of this rule to stocks would, as before said, be very inadequate and unjust."

A plaintiff's right of recovery must be deemed fixed at some time, and he should not be permitted to wait for an indefinite period, and speculate upon the changes in the market, while taking upon himself none of the risks of a decline in the value of the article converted. This would put him in a better position than if he had the property in possession. If the plaintiff had not lost his title to the property, he had the option of following and recovering it. But by bringing this action of trover he seeks to recover damages for the conversion. By the conversion he was deprived of the property, and a claim for the value of it took its place. Consequently, that value at the time of the conversion, with interest, should be the limit of his recovery. If the property, or the probability of collection of the judgment obtained upon the notes, had been increased because of the extra efforts, care, research, and expense bestowed by the purchaser of the notes, or his paid attorneys, in uncovering concealed or hypothecated property of the maker, so as to make the collection possible six months after the conversion, after the commencement of this suit, and after the purchaser had tendered the property back to the plaintiff, this increased value should not inure to the benefit of the plaintiff. 2 Sedg. Dam. § 499. It would be almost impossible to review and reconcile the many conflicting opinions that have been delivered upon this subject. We are inclined to adopt the rule that the measure of damages, in cases of this character, is the value of the property at the time of the conversion, with interest thereon to the time of the trial. It will be remembered that the bank sold and traded the collateral notes to Little on June 16, 1893, and that the plaintiff had notice of the sale at that

time. Little testified that he offered the notes back to the plaintiff several times during the summer of 1893, on payment of the $1,000 and interest, which offer was not accepted. Mr. Hills testified that he tendered the notes back to plaintiff three days after the demand was made in December, 1893; but there is a conflict on this point. This suit was brought December 18, 1893, about six months after plaintiff had notice of the sale of the collateral notes to Little. We are inclined to the view that the admission of the proof as to what Little received for the judgment from the syndicate, with which Beck had nothing to do, at a time over six months after the sale or trade of the notes with plaintiff's knowledge, and after demand, refusal, and alleged conversion by the bank, and after the commencement of this action, was error. *Kennedy* v. *Whitwell*, 4 Pick. 466; *Bates* v. *Stansell*, 19 Mich. 91; 2 Sedg. Dam. 499. If the admission of this testimony was proper, then the defendant had the right to show, on cross-examination of Little, the facts attending the assignment of the judgment, and that Beck was insolvent at that time. It is apparent, from the statements of counsel, that the court took this evidence into consideration in making its findings.

The next question to be considered is the question of damages arising from the alleged conversion of the Beck notes, and the errors assigned upon the admission and rejection of testimony with reference to Beck's solvency. At the trial the court limited the defendant's proof as to the value of Beck's notes and the solvency of Beck to a period between the 16th day of June, 1893, the day of the sale of the notes by the bank to Little, and the 16th day of December, 1893, the time of the alleged conversion, tender, and demand of the Beck notes by the plaintiff.

The defendant had introduced testimony of several witnesses tending to show that the market value of Beck's notes between these dates was from 1 to 16 cents on the dollar, and that Beck was insolvent and unable to pay his debts, and was under serious financial embarrassment during that period; that several judgments against him remained unpaid; and that the notes could not be collected.   The plaintiff, in his rebutting case, offered as a witness John Beck, the maker of the Beck notes, who gave testimony tending to show that he owned property liable to execution, and that he was solvent, although hard pressed for funds, during that period.   Upon the cross-examination of Mr. Beck by the attorney for defendant, the following question was propounded to him:   " Q. I will ask you whether, between June, 1893, and December, 1893, you did not tell me, in your office, when I went there with a claim for some Eastern people, that it would do no good to sue you,—that you had no property that your creditors could reach?"   The question was objected to, the answer was excluded, and an exception taken. We think this question was proper, and should have been answered.   Mr. Beck had given testimony tending to show his solvency and ability to pay his debts.   The question was pertinent to the issue.   If he made such a statement concerning his property and want of financial ability, it was proper the court should know it, as affecting his credit as a witness, and as contradicting and qualifying his testimony in chief, and also as laying the foundation for impeachment.   We think the court erred in sustaining the objection.   Other questions of a similar character were asked, and the answers excluded. Whether Mr. Beck was solvent at that time, and was able and disposed to pay his debts, and had property that

his creditors could reach upon execution, was one of the principal questions to be determined, in order to ascertain the value of his notes. In a case of this character, where the plaintiff was seeking to recover in trover for the value of the Beck notes, alleged to have been converted by the defendant, the plaintiff was *prima facie* entitled to recover the face value of the notes at the time of the conversion, with interest, upon showing ownership and conversion of the paper. But it was competent for the defendant, in his defense, to show, in reduction of damages, the insolvency and inability of the maker to pay, or any other matter which would legitimately affect or diminish their value, or which would tend to show insolvency and want of business integrity. 1 Sedg. Dam. § 256; 3 Suth. Dam. pp. 520-522. Under this rule, the neglect or refusal of the maker to pay his note at maturity is evidence tending to show his inability to pay; and such testimony was competent to be shown for the purpose of reducing the damages, and as affecting the value of the notes. *Booth* v. *Powers,* 56 N. Y. 22; *Brown* v. *Montgomery,* 20 N. Y. 287; *Terry* v. *Allis,* 20 Wis. 35; *King* v. *Ham,* 6 Allen 298.

The fact that Beck kept his property concealed or covered up in the name of other parties, where it could not be found or reached by execution, if shown, would tend to affect the value of his paper, was proper testimony, and should have been admitted. So the proper return of executions *nulla bona,* issued upon a valid judgment against Beck, were *prima facie* evidence of his insolvency at the time. *Phillips* v. *Webster,* 85 Ill. 146; *Brown* v. *Brooks,* 25 Pa. St. 210.

The appellant also contends that there is no evidence to support the finding that the defendant converted the notes to his own use on December 16, 1893, that being

the time of the alleged demand and refusal. The testimony and findings show that the pledged notes were traded by the bank to Little, June 16, 1893, and due notice given to plaintiff of the sale at that time. The defendant came into possession of the notes lawfully, as a pledge and security for the payment of plaintiff's note. The court found that the payment of plaintiff's note was extended beyond June 16, 1893, by the payment of interest beyond that date, and that plaintiff's note was not due at the time defendant sold or traded it for bank stock to Little. Therefore, the sale or trading of the collateral notes before the maturity of the principal note was unlawful and wrongful, and no demand or refusal was necessary. If the notes were converted at all by the defendant, the conversion took place at the time it made an absolute trade and wrongful disposition of them, of which plaintiff had immediate notice. " The refusal to surrender possession in response to a demand is not, of itself, a conversion. It is only evidence of a conversion, and, like other inconclusive acts, is open to explanation." Cooley, Torts, pp. 530-532; Cooley, Elem. Torts, pp. 181, 182; 2 Add. Torts, 395-398; *Insurance Co.* v. *Dalrymple*, 25 Md. 269; Story, Bailm. § 349; 1 Chit. Pl. 157, 158; *Ward* v. *Wood Co.*, 13 Nev. 44; *Mining Co.* v. *Tritle*, 4 Nev. 497; *Trudo* v. *Anderson*, 10 Mich. 357; *Howitt* v. *Estelle*, 92 Ill. 218; *Buntin* v. *Pritchett*, 85 Ind. 247; *Hake* v. *Buell*, 50 Mich. 89.

If defendant had not the actual or constructive possession of the property at the time of the demand, and therefore could not deliver it, his liability would not be affected by the demand and refusal; for, if he had been guilty of the conversion before, no demand was necessary, and, if he had not been, a failure to do what, for any reason, he was unable to do, could not render him so.

Cooley, Torts, p. 532. It is held, in *Tyng* v. *Warehouse Co.*, 58 N. Y. 315, in an action for the conversion of bonds, "that the conversion took place when the defendant wrongfully sold the bonds, and the measure of damages was their value at the time of sale." *Insurance Co.* v *Dalrymple*, 25 Md. 269; *Henshaw* v. *Bank*, 10 Gray 568; *Bank* v. *Boyd*, 44 Md. 47. We are of the opinion that the court was in error in finding that the defendant converted the notes to its own use on December 16, 1893.

Appellant contends that the findings of the court are inconsistent and contradictory in this: That in general finding No. 3 the court found that on the 16th day of December, 1893, the defendant unlawfully disposed of and converted to its own use the two Beck notes, to the damage of the plaintiff in the sum of $6,435, this sum being the value of said notes on that date; that in special finding No. 8 the court found that there was no market value to said Beck notes on the said 16th day of December, 1893, that being the day on which the alleged conversion took place, and in special finding No. 6 the court found that there was no market value to Beck's notes on the 16th day of June, 1893; that the special findings control, and that those findings do not support the judgment, but are contradictory and inconsistent with it; and that special finding No. 8 is contrary to the evidence, and is not supported by it. The value of the notes on December 16, 1893, is fixed at their full face and interest, while they are held to have no market value on that date. The court permitted the defendant to show that the notes had a market value, and that such market value was from 1 to 16 cents on the dollar between June 16 and December 16, 1893, and that Beck was insolvent, as bearing upon the value of the notes, but declined to allow defendant to show such value after these dates, as too remote

14 UTAH—21

from the date of conversion. If they had no market value, it was still competent for the defendant to show, in reduction of damages, the inability of the maker to pay, his insolvency, or any other matter which would legitimately affect or diminish the value of the notes at the time of conversion. *Bank* v. *Boyd,* 44 Md. 47; *Sturges* v. *Keith,* 57 Ill. 451; *McKenney* v. *Haines,* 63 Me. 74; *Fisher* v. *Brown,* 104 Mass. 259; *Spencer* v. *Vance,* 57 Mo. 427; 1 Sedg. Dam. §§ 256, 257, 357, 244, 497, 5 Am. & Eng. Enc. Law, p. 40; 3 Suth. Dam. 488, 491, 496; *Boylan* v. *Huguet,* 8 Nev. 345; *Brown* v. *Allen,* 35 Iowa 306; *Galigher* v. *Jones,* 129 U. S. 193; *Baker* v. *Drake,* 53 N. Y. 211; *Ormsby* v. *Mining Co.,* 56 N. Y. 623; *Deck's Adm'r* v. *Feld,* 38 Mo. App. 674; *Tyng* v. *Warehouse Co.,* 58 N. Y. 308.

The testimony given bore upon the value of the notes, and tended to fix such value. The object and purpose of such testimony was to inform the court what the value of the notes was, so that the court could render a judgment for that value. When the value was found, and judgment rendered, the parties had a right to know, from the findings, what the ultimate facts were upon which the judgment was rendered. Such findings should be consistent, and support the judgment, and leave nothing to conjecture. The court found, in its general findings, that the value of the notes on December 16, 1893, was $6,435, and afterwards made its special findings that such notes had no market value on December 16, 1893. The evidence on the part of the defendant tended to show the market value of the notes to be from 1 to 16 cents on the dollar at this time, and no evidence of the market value was offered by the plaintiff. Special findings control the general findings on the same subject, where there is a conflict between them. *Hidden* v. *Jordan,* 28 Cal. 302; *Reese* v. *Corcoran,* 52 Cal. 495; *Sloss* v. *Allman,* 64 Cal.

47; *Harris* v. *Harris*, 59 Cal. 620; *Manly* v. *Howlett*, 55 Cal. 95; *Burk* v. *Webb*, 32 Mich. 173; *Delashman* v. *Berry*, 20 Mich. 292; *Brown* v. *McHugh*, 36 Mich. 433.

The cash market value of an article having a market value is usually the test of its value. This test, however, may not in all cases apply to commercial paper. In some cases such paper may be comparatively worthless in the market, and still have its intrinsic face value; while in other cases it may have its face market value, but be of no intrinsic value. The value in either case may be shown, as fixing the true value. We are of the opinion that the findings should have been more explicit, and have left less room for apparent contradiction and conjecture. The finding that the notes had no market value was against the evidence, and was not supported by it. Facts of an equivocal import cannot well be reduced to a certainty by conjecture. A finding should afford the means for its own interpretation, and for fixing its own sense, and should be sufficiently distinct and definite to enable the court to decide upon the judgment. *Brown* v. *McHugh*, 36 Mich. 435.

The judgment of the district court is set aside and reversed, with costs, and a new trial granted.

ZANE, C. J., and BARTCH, J., concur.