[No. 11786.  Department One.  July 22, 1914.]

LUCY NICHOLSON, *as Executrix etc., Appellant,* v.
T. T. KILBURY, *as Administrator etc.,*
*Respondent.*[1]

WITNESSES—COMPETENCY—TRANSACTIONS WITH DECEASED—STATUTES—CONSTRUCTION. Rem. & Bal. Code, § 1211, providing that "in an action or proceeding where the adverse party sues or defends as executor, administrator, or legal representative of any deceased person, or as deriving right or title by, through, or from any deceased person, . . . then a party in interest or to the record shall not be admitted to testify in his own behalf as to any transaction had by him with or any statement made to him by any such deceased person," excludes such a party from testifying to declarations made in his presence by the deceased to third persons, since the same fall within the spirit of the law, and the mischief of the old law, although the statute does not use the words "or in his presence."

[1]Reported in 141 Pac. 1043.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered May 6, 1913, dismissing an action to recover upon claims against the estate of a decedent, after a trial before the court and a jury. Affirmed.

*Voorhees & Canfield* and *C. E. H. Maloy*, for appellant.

*Peacock & Ludden* and *H. G. Kinzel*, for respondent.

CHADWICK, J.—The plaintiff claims an interest in property now held by defendant as administrator of the estate of Emma J. Kilbury, deceased. Plaintiff sought to prove her interest by testifying to conversations had by the decedent with third parties, but in her presence and hearing. The court rejected the evidence, and from a judgment in favor of the defendant, plaintiff has appealed.

The only question involved in this action is whether the testimony should have been received. Rem. & Bal. Code, § 1211 (P. C. 81 § 1027), reads as follows:

"No person offered as a witness shall be excluded from giving evidence by reason of his interest in the event of the action, as a party thereto or otherwise; but such interest may be shown to affect his credibility; provided, however, that in an action or proceeding where the adverse party sues or defends as executor, administrator, or legal representative of any deceased person, or as deriving right or title by, through, or from any deceased person, or as the guardian or conservator of the estate of any insane person, or of any minor under the age of fourteen years, then a party in interest or to the record shall not be admitted to testify in his own behalf as to any transaction had by him with or any statement made to him by any such deceased or insane person, or by any such minor under the age of fourteen years: Provided further, that this exclusion shall not apply to parties of record who sue or defend in a representative or fiduciary capacity, and who have no other or further interest in the action."

It will be observed that the statute does not use the words "or in his presence."

The statutes of the several states are generally very similar. The question has been before the courts in the state of

New York many times, and the earlier construction was that such testimony is competent; but in the later case of *Griswold v. Hart*, 205 N. Y. 384, 98 N. E. 918, 42 L. R. A. (N. S.) 326, the cases so holding are overruled and it was held that such testimony is barred by the statute. It was held in the state of Georgia, in the case of *Ray v. Camp*, 110 Ga. 818, 36 S. E. 242, that such testimony is competent. Immediately following the announcement of that decision, the legislature passed an act which in terms extended the disqualification to a witness who undertook to testify to the statements of a deceased person made to another but in his presence. Acts 1900, p. 57. This statute is followed in the later case of *Wilder v. Wilder*, 138 Ga. 573, 75 S. E. 654. We cite these two instances to show the trend of modern opinion. This court has never been called upon to decide the question, and we are therefore at liberty to treat it with an open mind.

We believe that the later New York case is consistent with the spirit and policy of the law. The rule of exclusion is severely denounced by Wigmore in his work on Evidence, § 578; but notwithstanding his strictures, the statutes are in force and the policy of the legislative body is not to be denied—that is, that the temptation to testify to communications and transactions and to declarations made by a deceased person might be so strong upon a party in interest that it would be unwise to receive such testimony when the lips of his adversary are closed. If it be sound policy to deny the interested party the right to testify to a conversation made immediately to him, it would be equally unwise to permit that same party to testify to a conversation addressed to another in his presence, and it works no hardship, considering the purpose of the law, to compel the party seeking the benefit of such declaration to call the one to whom the communication was made as a witness. The color of interest is the thing that the law has undertaken to remove.

We agree with counsel that there is a presumption of com-

petence when a witness is offered, but that presumption must be construed in the light of the statute defining the limit to which a witness may go. When so tested, it seems to us that the statute means that a party may not testify to the declarations of deceased persons when made to a third party in his presence. In other words, the statute means that a party in interest is not to make himself a vehicle to carry the words of his deceased adversary into the record of a contested proceeding.

Whether the policy voiced by the state is good or bad is something with which we have nothing to do. It is enough that it has been declared by the legislature, and it will not be denied that the mischief here complained of is the same mischief covered by the literal words of the statute. This being so, we think that it can be said that the present case falls within the statute under the doctrine of necessary implication; for truly, anything that is within the mischief of an old law is, or should be held to come, within the spirit of the new law, and should not be excluded unless for the want of apt words or an evident purpose to exclude it. There are sound reasons for the application of this rule in cases such as this. Abuses would surely follow; as for instance: The supreme court of Iowa, which has been more active in establishing what is called the general rule, than any other court, not excepting the courts of New York—for they have not always been consistent with themselves—has been forced to the logical sequence of its holdings, notwithstanding the illogical result and has held that a party can testify to a transaction between a co-party of his and the deceased. *Mayes v. Turley*, 60 Iowa 407, 14 N. W. 731; *Erusha v. Tomash*, 98 Iowa 510, 67 N. W. 390; *Powers v. Crandall*, 136 Iowa 659, 111 N. W. 1010.

Then, too, there are reasons occurring to us not noticed in the authorities the writer has read. A designing person— and the statute is drawn upon the theory that the temptation upon a survivor will be sufficient to break the back of hon-

esty—might say that a third party, not called as a witness or who has since died, was present and that the remark was addressed to the third party and not to him. The challenged witness would, in such event, actually become the trier of his own qualifications and the vice covered by the statute would run unchecked. The rule should not then be made to turn on the question, Who was the remark addressed to? but rather, Is it most likely that the words repeated are the words spoken by the deceased? In spirit the statute takes no account of who is addressed or who is the participant in a transaction, but it does concern itself with the interest or lack of interest of the one who repeats the words or details the transaction. A person may talk *to* one person and *at* another. We know that men cannot repeat their own conversations as they actually occurred, after a lapse of time, and the statute demands that a party should not be allowed to repeat the words of his adversary or give his version when the adversary cannot reply and counsel cannot cross-examine, having the deceased person's version of the transaction, if indeed it occurred at all, in mind. To quibble over the manner in which the condition sought to be restrained or avoided has been brought about is to sacrifice form to substance. To receive the evidence if a third party is present to whom the interested party *says* the remark was addressed, and to scourge it if the face of the speaker was turned toward the witness when the words were spoken, is a refinement, subtle, misleading and destructive of an evident policy. In *Griswold v. Hart, supra,* after a full consideration of its former decisions, the court says:

"I think we can consistently and logically enunciate but one of two rules—that of the earlier cases based on what is claimed to be a strict construction of the words of the statute, that a witness is disqualified from testifying only in a transaction or conversation in which he takes actual part, or the other rule, that whatever he derives from the personal presence of the deceased by the use of his senses is a communica-

tion from the deceased to him within the meaning of the statute. . . .

"I appreciate that . . . many persons advocate the admission of interested witnesses to testify to all matters, whether with a deceased person or with others, leaving the credibility of the witnesses to be determined by the court or jury. Whatever may be said of this view it certainly is not the view which has been taken by the legislature, and of all rules a rule that permits an interested witness to testify to an act or statement by the deceased on which his rights depend, if he takes no part in either, but excludes him if he does, would seem about the worst. It is most easily evaded by the dishonest witness, while often fatal to the conscientious. Nor is the broad exclusion declared in the later cases of this court clearly an enlargement of the statute. Communication is not necessarily confined to conversations. Anything imparted by one to another is communicated by him, even disease. A personal communication, within the meaning of the section, was well defined by the supreme court in *Price v. Price* (33 Hun 69, 73), as 'any one which the surviving party claims to have received directly or indirectly from the deceased person, and which the deceased person if living could contradict or explain. Nor, in our judgment, is the mode of making the communication by the deceased to the survivor at all controlling.' "

We shall not go into the cases. They are collected in a very valuable monographic note in 29 L. R. A. (N. S.) 1179, and in a continued note in 42 L. R. A. (N. S.) 320. There is nothing in the case of *Sackman v. Thomas*, 24 Wash. 660, 64 Pac. 819, that is contrary to our present holding, unless it be the words, "it would be going too far, on assumed propriety, to add a disqualification to a witness not specified in the statute."

Measuring the statute by its four corners, we think the witness offered in this case is met by a disqualification "specified" in the statute.

Affirmed.

CROW, C. J., MAIN, and ELLIS, JJ., concur.