## MOWER v. MOWER.

No. 4116.  Decided August 20, 1924.  Rehearing denied September
23, 1924.  (228 Pac. 911.)

1. DEEDS—DEED FOUND IN GRANTOR'S POSSESSION PRESUMED NOT
DELIVERED.  Deed found in grantor's possession at time of his
death is presumed never delivered, and burden of proving de-
livery is on defendant.

2. WITNESSES—TESTIMONY OF DECEASED GRANTOR'S CHILDREN BY
PLURAL WIFE HELD NOT INADMISSIBLE AGAINST ADMINISTRATOR.
In administrator's action involving question of deceased grant-
or's delivery of deeds to his plural wife, testimony of children
of grantor by such wife that they had seen deed in mother's
possession shortly after execution, held not inadmissible under
Comp. Laws 1917, § 7123, subd. 3, particularly in view of fact
that such children had released all claims to their father's
estate.[1]

3. EVIDENCE—STATEMENTS BY DECEASED GRANTOR HELD ADMISSIBLE
ON QUESTION OF DELIVERY OF DEEDS.  In action involving ques-
tion of grantor's delivery of deeds to plural wife, proof of state-
ments by grantor after execution of deeds, tending to show
nondelivery and proof that he had stated in application for
grazing permit that land belonged to him, held admissible.

4. DEEDS—DELIVERY IS QUESTION OF INTENT; MATTERS ADMISSIBLE
ON QUESTION OF INTENT STATED.  As delivery of deed is essen-
tially matter of intent, all facts and circumstances including
declarations of grantor before and after date of deed, at least
where fairly made in ordinary course of life, not in anticipation
of controversy and in absence of fraud or misrepresentation,
are admissible.

5. EVIDENCE—DECLARATIONS EVIDENCING INTENT OR STATE OF MIND
ADMISSIBLE IN EXCEPTION TO HEARSAY RULE.  In exception to
hearsay rule declarations are admissible which tend to prove
intention or state of mind.[2]

---

[1] Ewing v. White, 8 Utah, 250, 30 Pac. 984; Hennefer v. Hays, 14
Utah, 324, 47 Pac. 90; Clawson v. Wallace, 16 Utah, 300, 52 Pac. 9;
Robison v. Gull, 52 Utah, 323, 173 Pac. 905; Olson v. Scott, 61 Utah,
42, 210 Pac. 987; Staats v. Staats, 63 Utah, 470, 226 Pac. 677.

[2] State v. Mortenson, 26 Utah, 312, 73 Pac. 562, 633; Dunn v. Salt
Lake & O. R. R. Co., 47 Utah, 137, 151 Pac. 979.

See 18 C. J. §§ 95, 495, 524; 22 C. J. §§ 167, 193, 262, 297; 40
Cyc. pp. 2281, 2563.

6. WITNESSES—COURT'S REFUSAL TO PERMIT IMPEACHMENT OF WIT-
NESS, ON THEORY THAT CASE HAD BEEN CLOSED, HELD ERROR. De-
fendant, though not called as a witness until late in case (re-
ferred to by counsel as surrebuttal), *held* nevertheless subject
to cross-examination and impeachment as though she had testi-
fied in her case in chief, and refusal to permit production of
impeaching witnesses was error.

Appeal from District Court, Seventh District, Sanpete
County; *Dilworth Woolley,* Judge.

Action by James Byron Mower, administrator of estate
of Wm. E. Mower, deceased, against Cecelia Mower. Judg-
ment for defendant, and plaintiff appeals.

REVERSED and REMANDED for new trial.

*A. W. Jensen,* of Ephraim, and *A. H. Christenson,* of
Manti, for appellant.

*Lewis Larson,* of Manti, for respondent.

HARRIS, District Judge.

This is an action in which the plaintiff, in two causes of
action, seeks to quiet title to certain real estate and water
rights as the property of Wm. E. Mower at the time of his
death, and to cancel two deeds covering the said property
in favor of defendant.

Plaintiff in his complaint alleges in substance that Wm.
E. Mower died intestate at Milburn, Sanpete county, Utah,
on April 15, 1921, leaving a widow and two families of chil-
dren, one family by defendant, who was known as his plural
wife; that the plaintiff was the duly appointed administrator
of the estate of Wm. E. Mower; that at the time of his death
he was the owner of the real estate and water rights de-
scribed therein and the subject of this action; that in the
years 1912 and 1913, respectively, Wm. E. Mower and wife
made deeds to the said lands to defendant, but never deliv-
ered the deeds to defendant; that, after the death of said

Wm. E. Mower, defendant unlawfully obtained possession of said deeds and recorded the same; and that defendant has possession of the said property and refuses to surrender it to plaintiff.

Defendant admits the making and recording of the deeds, but denies the other allegations of the complaint. For further defense, defendant alleges that the deeds described in the complaint were at the respective dates thereof made, executed, and delivered to the defendant and accepted by her, and that ever since said times she has been the owner of and entitled to and in possession of the said property.

The real issue in the case, therefore, was whether or not the deeds in question were ever delivered so as to pass the title to defendant.

The evidence showed that Wm. E. Mower lived with his two wives in two homes about a quarter of a mile apart, on his farm, and that at the time of his death left surviving him Emily R. Mower, his widow, and seven children by her; also eight children by the defendant. It appears that after Mr. Mower's death all of his papers were found in a safety deposit box in the vault of the Fairview State Bank. The box was opened by the cashier of the said bank in the presence of both families, and in it were found the deeds in question, together with unrecorded deeds to Emily R. Mower conveying other property, as well as other unrecorded deeds, also two documents reading:

"Order for Transfer of Water.

"To Secretary of Milburn Irrigation Company: Kindly transfer 10½ shares of primary water now owned by me in the Milburn Irrigation Company to Cecilia Jensen Mower, and oblige.

[Signed]   Wm. E. Mower."

A similar order in favor of Emily R. Mower, together with the stock certificate for the amount of the two orders, was found in the box. The evidence also shows that deceased, shortly after the organization of the Fairview State Bank in 1914, rented the safety deposit box in the bank and kept his papers in the same, and that he was the only person having access to the box. That after the dates of the deeds the deceased continued to farm, manage, and control the

farm, paying the taxes, and in his own way and as owner receiving and disposing of the products of the same up to the time of his death, and also that at one time he mortgaged the property for the purpose of taking up a prior mortgage thereon, that had become past due.

There is no evidence that the orders for transfer of water rights were ever delivered to grantees during the lifetime of the deceased; and it was admitted at the trial that the records of the irrigation company showed the same number of shares of stock standing in the name of Wm. E. Mower at the date of his death.

It appears that, when the safety deposit box was opened in the presence of the two families, each of the persons named as grantees in the deeds took their respective deeds and papers, Emily R. Mower retaining the old box held by Wm. E. Mower in his lifetime, and defendant renting a new box for her deeds. Later the parties recorded their respective deeds. Some dispute arose, and the widow Emily R. Mower offered to reconvey the property covered in the deeds to her, and requested Cecelia, defendant, to do the same. The request was refused and this suit is the result.

The evidence of delivery of the deeds relied upon by the defendant consists of the testimony of some six of her children and the widow of one of her deceased sons, to the effect that they saw the deeds in their mother's possession a short time after they were made, and some of the witnesses testified that they talked the matter over with their father (the deceased), and that he explained to them what the deeds were; that this was done after he had requested the defendant to produce the deeds, and that she produced them in her home. Two or three of the witnesses testified that when the bank at Fairview was opened they heard their mother (defendant) discussing with their father the advisability of his taking the deeds to the bank for safe-keeping for her.

The district court found in favor of delivery, and made findings and judgment awarding the property described to the defendant. Plaintiff appeals.

The plaintiff relies for reversal upon alleged error in

permitting the defendant's children to testify as to the delivery of the deeds, on two alleged errors on ruling excluding evidence, and that the finding as to delivery is contrary to the weight of the evidence. There seems to be no dispute between counsel that, where a deed is signed and acknowledged, but found to be in possession of grantor at the time of his death, a presumption arises that it was never delivered, so that the burden of proving delivery is upon defendant. For this proposition, see *Donahue* v. *Sweeney*, 171 Cal. 388, 153 Pac. 708; 13 Cyc. 733, and note collecting cases in 44 L. R. A. (N. S.) 528. Plaintiff assigns as error the admission of the testimony of defendant's children as to delivery. If this evidence is incompetent as claimed by plaintiff, then there would be no evidence to sustain the finding of delivery. Plaintiff contends that these witnesses were incompetent to testify under the provisions of subdivision 3, § 7123, Comp. Laws Utah 1917, which reads as follows:

"The following persons cannot be witnesses:   *   *   *

"(3) A party to any civil action, suit, or proceeding, and any person directly interested in the event thereof, and any person from, through, or under whom such party or interested person derives his interest or title or any part thereof, when the adverse party in such action, suit, or proceeding claims or opposes, sues or defends as guardian of any insane or incompetent person, or as the executor or administrator, heir, legatee, or devisee of any deceased person, or as guardian, or assignee, or grantee, directly or remotely, of such heir, legatee, or devisee, as to any statement by, or transaction with, such deceased, insane, or incompetent person, or matter of fact whatever, which must have been equally within the knowledge of both the witness and such insane, incompetent, or deceased person, unless such witness be called to testify thereto by such adverse party, so claiming or opposing, suing or defending in such action, suit, or proceeding."

This section of the statute has frequently been before this court, and similar sections have been before a number of courts, and the cases, like the language of the statute, are not entirely free from confusion.

Appellant here argues that because these witnesses are children of the deceased, Wm. E. Mower, they have a direct

interest in the result of the suit, and, are therefore prohibited from testifying under the statute, citing *Ewing* v. *White*, 8 Utah, 250, 30 Pac. 984; *Hennifer* v. *Hays*, 14 Utah, 324, 47 Pac. 90; *Clawson* v. *Wallace*, 16 Utah, 300, 52 Pac. 9; *Robison* v. *Gull*, 52 Utah, 323, 173 Pac. 905. None of these cases help us much in the case at bar because they are all cases where a party to the suit attempted to testify to transactions with deceased persons, and therefore came within the plain provisions of the statute.

In the case at bar we are asked to make a rather unique application of the statute, and hold that, because these children are heirs of the deceased and therefore interested in seeing his estate increased by voiding these deeds for lack of delivery, still they are by this statute made incompetent to testify against this interest, viz., to facts which tend to prove there was a delivery, and therefore defeat their own interest. We do not believe the statute was intended to go that far. If we assume that these parties have an interest in the event of this suit by reason of the fact they are heirs of the deceased, then that interest is with the plaintiff and not with the defendant, so that the adverse party (defendant) is not defending as an administrator heir, or legatee, or devisee of the deceased, Wm. E. Mower, but is defending in her own right as grantee in the deed, so that the express terms of the statute do not exclude these witnesses. It would seem, therefore, that "party interested" here should refer to a party whose interests in the event of the suit are adverse to the interests of the deceased person and his estate, and not persons whose interests are with the deceased person. The fact that the witnesses are children of the defendant does not in our opinion give them an interest in the event of the suit and we do not understand plaintiff makes such a contention. While the children may have a natural or instinctive interest in the welfare of their mother, they have no legal interest in her success.

This court has held that a husband is not such an interested party in the event of a suit as to be precluded from testifying in favor of his wife, and the interest of the hus-

band in the outcome of his wife's litigation should be analogous to this case. *Olson* v. *Scott,* 61 Utah, 42, 210 Pac. 987. See, also, *Staats* v. *Staats,* 63 Utah 470, 226 Pac. 677, and cases there cited.

There is another reason why these witnesses were not incompetent. Prior to the commencement of the suit, they signed a document wherein Emily R. Mower and Cecelia Mower were mentioned as parties of the second part, in which they—

"hereby waive all right, title, and interest which they or either of them have or may have in and to the estate of Wm. E. Mower, deceased, of Milburn, Sanpete county, Utah, and convey, assign, and set over any and all of the said interest to the said parties of the second part," etc.

The subject is annotated in a long note in 28 A. L. R. 1, where, at page 7, the annotator says:

"But it may be said that the cases quite generally hold that, in the absence of a statutory provision to the contrary, a valid release of his interest, made in good faith, removes the disqualification of an interested witness."

And on page 16, the same note, makes the same statement as to an assignment of his interest; so that whether we call this an assignment or a release of the interest of the witness, it appears to be in good faith and therefore removes the disqualification. A long list of cases supporting the above text is cited by the annotator, to which the reader is referred if further pursuit of the subject is desired.

Defendant further raises the proposition that much of the testimony is not objectionable, because the witnesses testified that they saw the deeds in the possession of their mother when their father (deceased) was not present, and therefore the testimony did not concern any statement by or transaction with the deceased person equally within the knowledge of the witness and such deceased person. We refrain from deciding this question, which was also presented in *Olson* v. *Scott,* supra, for the reason that the case can be and is disposed of on the other grounds mentioned.

We find no error in permitting these witnesses to testify.

We pass to the assignments of error involving the exclusion of offered evidence.

Early in the trial plaintiff produced a witness and offered to prove by him declarations of the deceased made about the year 1915, to the effect that he had made the deeds and put them in his box and had them there, and when he died his wives could go and get the deeds and the property would be theirs; and further that he had deeded away part of the land covered by Emily's deed, and he would have to revise the deeds so as to make it equal, or words to that effect. The objection to the offer was sustained upon the ground the declarations were self-serving and hearsay. The court also refused to receive in evidence an application signed by Wm. E. Mower, dated January 10, 1920, to the United States Forest Department, in which he stated that he was the owner of the lands described in the deeds, and as such owner made application for a grazing permit for cattle on the forest reserve, upon the same ground that the statement was self-serving and hearsay.

While the cases on this subject present some apparent conflict, plaintiff relies principally on the case of *Williams* v. *Kidd*, 170 Cal. 631, 151 Pac. 1, Ann. Cas.  **3** 1916E, 703, which appears to be a carefully considered case on the subject, and which says:

"It is, of course, well settled that acts and declarations of a grantor made after he has parted with the title to property and in disparagement of it are inadmissible when made in the absence of the grantee. * * * But here the very question was whether Williams had ever parted with title to the property. This was the main issue in the case, the claim of respondents being that there had been no delivery of the deed with intent on the part of Williams to do so. The conduct and declarations of Williams covered a period subsequent to the making of the deed, and while Kidd held it as a depositary, and we are satisfied that such acts, conduct, and declarations of Williams with reference to the property during that period were properly admissible as bearing on the issue as to whether there had been a delivery of the deed."

And later on in the same case:

"'Delivery' is a word of well-defined meaning in the law. It is the act, however evidenced, by which the instrument takes effect

and title thereby passes.  Of course it is true that after such de-
livery no acts of declarations of the grantor in derogation of his
grant will be received.  But, where the vital question is whether
or not he did deliver the instrument, and where, as always in such
cases, his lips are sealed by death, and the opposing testimony of
the grantee or depositary, honest or fraudulent, cannot be contra-
dicted by him, it is but an invitation to fraud and perjury and to
their success to refuse admission to such evidence."

Many of the cases on the subject are collected and discussed
in the case, and two earlier California cases (*Bury* v. *Young,*
98 Cal. 446, 33 Pac. 338, 35 Am. St. Rep. 186; *Ord.* v. *Ord,*
99 Cal. 524, 34 Pac. 83), are either distinguished on the
ground that "executed" includes "delivery," or they are
overruled.

While the facts in the case of *Williams* v. *Kidd* are slightly
different than the facts in this case, in that the defendants
claimed the deed there in question to be a forgery, and there
was also the question of delivery to a third person which is
not involved here, the Supreme Court of California have
repeatedly upheld the doctrine announced in the above quo-
tations, in some of the cases on facts very similar to those
at bar.  *Rice* v. *Carey,* 170 Cal. 748, 151 Pac. 135; *Fisher* v.
*Oliver,* 174 Cal. 781, 164 Pac. 800; *Schooler* v. *Williamson*
(Cal. Sup.) 221 Pac. 195; *Donahue* v. *Sweeney,* 171 Cal. 388,
153 Pac. 708.

Respondent cites us to the annotation of *Williams* v. *Kidd,*
in the note to Ann. Cas. 1916E, page 713, and particularly
to the annotator's statement, as follows:

"It has been held that a grantor's declaration and acts in his
own interest, after the deed is delivered, are not admissible to in-
dicate his intention in delivering the deed, since they are either
hearsay and made at a time too remote from the occurrence to
which they relate, or are self-serving declarations."

The cases cited in the annotation include *Bury* v. *Young*
and *Ord* v. *Ord,* supra, which cases are disposed of in the case
of *Williams* v. *Kidd,* supra.

It would seem that on principle to say that these state-
ments are self-serving and inadmissible after the delivery of
the deed is really begging the question.  It may be conceded
that they are inadmissible *after the delivery of the deed,* but

the real issue here is, Were the deeds ever legally delivered? If we assume the declarations are not admissible because the deeds have been delivered, then we are settling the issue of delivery without evidence or trial. The mere assertion of delivery does not prove it, and can it be fairly said that the burden is upon the defendant to prove delivery, and yet, for the purpose of settling the rules of evidence in the case, we will presume that there was a delivery? Since delivery is essentially a matter of intent, which intent is to be arrived at from all the facts and surrounding circumstances, we believe the better rule is to include in those facts and circumstances declarations of the grantor both before and after the date of the deed, at least where it appears that the declarations are made fairly and in the ordinary course of life, and not in apparent anticipation of controversy or litigation with reference to the matter discussed, and in the absence of any evidence of bad faith, fraud, or misrepresentation. The trial court apparently excluded these statements of the deceased upon the ground they were hearsay, since they were not made under oath and were without the presence of the defendant, and were not subject to cross-examination.

There is an exception to the hearsay rule that declarations are admissible, where material, which tend to show the intention or state of mind. 22 C. J. p. 281, § 297:

"Declarations may be relevant evidence as to the existence of a particular intent or intention in the mind of declarant. * * * The declarations are not direct evidence of the facts asserted, but merely circumstantial evidence as to the existence of some relevant and material fact."

Wigmore on Evidence (1st Ed.) § 1768, says:

"The prohibition of the hearsay rule, then, does not apply to all words or utterances merely as such. If this fundamental principle is clearly realized, its application is a comparatively simple matter. The hearsay rule excludes extrajudicial utterances only when offered for a special purpose, namely, as assertions to evidence the truth of the matter asserted."

This court, in *State* v. *Mortensen*, 26 Utah 312, 73 Pac. 562, 633, in passing on a somewhat similar question, says:

"The principal objections to the admission of this testimony urged are that the defendant was not present when the statements were made, and that it is hearsay evidence, and not a part of the res gestae. These objections are not sound. The fact that the defendant was not present when the declarations testified to were made is wholly immaterial, and the statements are not merely hearsay evidence. They are declarations of the intention and purpose of the deceased to meet the defendant, and were admissible, as original evidence, under one of the exceptions to the rule of hearsay.  *  *  *  The evidence of these declarations was not admitted for the purpose of showing that the deceased was actually at the house of the defendant, but to show what was in his mind—what his intentions were—at the time of utterance."

For another application of the same rule see *Dunn* v. *Salt Lake & O. R. R. Co.*, 47 Utah, 137, 151, Pac. 979.

In 22 C. J. 259, § 262, we find the following:

"Where, regardless of the truth or the falsity of a statement, the fact that it has been made is relevant, the hearsay rule does not apply, but the statement may be shown. Evidence as to the making of such a statement is not secondary, but primary, for the statement itself may constitute a fact in issue, *or be circumstantially relevant as to the existence of such a fact.*" (Italics ours.)

The author then states that in such case the issue is one of relevancy, and if relevant the evidence is admissible.

"The objection that evidence is hearsay is frequently raised under circumstances not calling for an application of the hearsay rule, and the reports are full of cases in which the courts have refused to sustain such an objection for the reason that the evidence at which it is directed did not possess the fatal characteristic of depending on the veracity and competency of some person other than the witness." 22 C. J. 205, § 167.

In line with the above quotations and authorities, we remark that in this case the proffered testimony was not offered to prove the truth of the declarations that his wives upon his death could go and get the deeds, or that it was the best way to keep his house in order, or that he had deeded a part of his land away and it would be necessary for him to change his deeds to make it equal, or the truth of the statements made in his application to the Forest Department, but was offered as additional circumstances, along with all the other acts and conduct and sur-

rounding circumstances, to determine whether or not there was a delivery of the deeds in question. We conclude that the offered evidence should have been received and that its rejection was error.

One other matter on exclusion of evidence is left for consideration. Byron Mower was called as a witness for the plaintiff in rebuttal and testified that on February 25, 1922, defendant said in his presence, in substance, that she knew nothing of the deeds to the dry farm and school lands (the deeds in question), until after Wm. E. Mower's death. Defendant was then called to the stand and she denied that she ever made such a statement. Whereupon counsel for plaintiff asked her, without objection, a number of questions laying the foundation for impeachment, one of which was as follows:

"Q. Now, I will ask you whether or not at that time and place you were not asked by Francis Mower and by Maroni Mower, if you had ever seen the deeds to the dry farm and to the school land before your father's death, and if you didn't answer, 'Why, I don't think that is any of your business, but the fact is, I never saw them until after father's death,' or words to that effect?" To which the witness answered, "No, sir."

Other similar impeaching questions were asked. When defendant was withdrawn as a witness, the plaintiff offered to produce the witnesses referred to in the impeaching questions for the purpose of impeaching the defendant. The offer was denied, apparently upon the ground the case was closed. Apparently both parties thought the impeaching questions were proper, and, if the questions were proper, plaintiff should have been permitted to produce the impeaching witnesses.

That the defendant did not take the stand until late in the trial of the case, referred to by counsel as surrebuttal, could not exempt her from impeachment, and having taken the stand, she was subject to the same rules of **6** cross-examination and impeachment as though she had testified in her case in chief. ''The impeaching witnesses should have been permitted to testify as to all proper and

material impeaching questions." *Walley* v. *Deseret National Bank,* 14 Utah, 305, 47 Pac. 147.

Plaintiff further contends that the findings are against the weight of the evidence. Since plaintiff was erroneously prevented from producing all of his proper evidence, and since the case must be retried, we refrain from further discussion of this subject, since the record contains some 500 pages of testimony and a large number of exhibits.

The judgment is reversed, and the cause remanded to the district court for a new trial. Costs to be paid from the estate.

WEBER, C. J., and GIDEON, THURMAN, and FRICK, JJ., concur.

CHERRY, J., being disqualified, did not participate herein.
On Application for Rehearing.

PER CURIAM. Respondent has filed a motion for rehearing in which her claims of error are all with reference to matters argued and decided, except as to questions of fact, and as to those matters we express no opinion, since the case must be tried again. It is also contended that the ruling in this case is contrary to that in the case of *Smith* v. *Hanson,* 34 Utah, 171, 96 Pac. 1088, 18 L. R. A. (N. S.) 520. These cases are clearly distinguishable since the declarations rejected in the case of *Smith* v. *Hanson* were offered "as direct evidence of the facts declared" which brought the offered testimony clearly within the general hearsay rule. We have no such case here as pointed out in the opinion, and no useful purpose could be served by restating the reasons therefor.

Appellant has also filed a motion for rehearing, and complains of our statement of the facts in the case. We have examined the alleged errors in the statement of the facts, and since the matters complained of could be of no controlling importance in the case, we refrain from taking time to discuss them separately. In an elaborate brief counsel complains of our construction of section 7123, Comp. Laws Utah

1917, and argue that the opinion herein is contrary to the following cases: In re Cunningham Estate, 94 Wash. 191, 161 Pac. 1193; *Brucker* v. *De Hart,* 106 Wash. 386, 180 Pac. 397; *O'Connor* v. *Slater,* 46 Wash. 308, 89 Pac. 885; *Zackheim* v. *Zackheim* (Colo. Sup.) 225, Pac. 268; *Nicholson* v. *Kilbury,* 80 Wash. 500, 141 Pac. 1043.

An examination of these cases discloses that they do not involve the question decided in this case. Most of them simply hold that an administrator may call a witness otherwise barred by the statute. Our statute expressly gives that right. That question was not involved nor discussed in this case.

Appellant also complains of the order requiring costs to be paid out of the deceased's estate. Section 7041, Comp. Laws Utah 1917, reads as follows: "In the following cases, the costs of appeal are in the discretion of the court: (1) When a new trial is ordered." This section controls in this case and after further consideraiion we are convinced that each party should pay his own costs on appeal in this case, and it is therefore ordered that the original opinion be modified to read, "Each party to pay his own costs on appeal."

With this modification both motions for rehearing are denied.